Beer *v.* Hooper et al.

---

## A. BEER *v.* HOOPER, SON & CO.

1. ATTACHMENT: BOND AND AFFIDAVIT BY ATTORNEY GOOD.—The bond and affidavit in a proceeding by attachment may be made by an attorney, whether the attaching creditor be a non-resident or not. Hutch. Dig. 845; Ib. 802, § 8.

.2. PRACTICE: GARNISHMENT.—It is unnecessary to demur to the answer of a garnishee, in order to test the legal sufficiency of the facts therein stated, to show that no judgment should be rendered against him for the plaintiffs; a motion for judgment on the answer is sufficient.

3. CONFLICT OF LAWS: INSOLVENT PROCEEDING: EFFECT OF AS TO NON-RESIDENT CREDITORS.—Insolvent proceedings in one of the States of the union, to which a creditor residing in a sister State has not assented, does not discharge a debt due to him by the insolvent.

4. SAME: FOREIGN ASSIGNMENT UNDER INSOLVENT PROCEEDINGS: EFFECT OF.—A prior assignment under the insolvent laws of the State of Louisiana, will not prevail against a subsequent attachment (by a creditor not bound by the insolvent proceeding,) of a debt due by a citizen of this State to the insolvent.

IN error from the Circuit Court of Lawrence county. Hon. John E. M'Nair, judge.

Beer *v.* Hooper et al.

On the 24th day of May, A. D. 1855, the defendant in error, sued out an attachment returnable to the Circuit Court of Lawrence county, in this State, against A. Beer & Co., a mercantile firm residing in New Orleans, in the State of Louisiana. The attachment was served on the same day, by summoning Moses Marx, a citizen of this State, as garnishee. The affidavit upon which the attachment was issued was made by W. P. Harris, agent and attorney of the plaintiff, but it did not state that the plaintiffs were non-residents, or absent from the country, and the bond was signed and sealed by W. P. Harris and E. L. Bowen. Publication of notice was made against the defendants; and a judgment by default was rendered against them.

Marx, the garnishee, answered at the returned term of the writ, and admitted that he had been indebted to said A. Beer & Co., in the sum of $2600; but stating that on the 9th of May, 1855, the said A. Beer & Co., having previously failed, made a voluntary surrender of their effects, embracing the debt due by him under the insolvent laws of Louisiana, to the Sixth District Court of that State, and that A. Beer had been appointed syndic, and as the representative of the creditors of said A. Beer & Co., claimed the debt due by the garnishee. A. Beer, being notified by publication of the proceedings in this State, appeared and propounded his claim as syndic, in a petition to the court, setting up substantially the same facts stated in the answer of the garnishee, and filing as an exhibit a certified copy of the record of the said Sixth District Court, in relation to the proceedings in insolvency of said A. Beer & Co. By this record it appeared that the said A. Beer & Co., on the 9th of May, 1855, filed their petition in said court, against the creditors, setting forth their inability to pay their debts, and asking that they be permitted to surrender their effects for the benefit of their creditors, and for a discharge from their debts, under the insolvent laws of Louisiana. The proposed surrender was accepted, and the said A. Beer, was appointed syndic, on the 21st of May, 1855. . It further appeared from this record; that the debt due by the garnishee was embraced in the schedule of assets returned by said A. Beer & Co., into the said court, and that the plaintiffs were their creditors and resided in Philadelphia;

in the State of Pennsylvania.   It did not appear that the plaintiffs were ever present by themselves or attorney, at any meeting of the creditors of the said A. Beer & Co., called by order of court, and in pursuance of the insolvent law of Louisiana, for the purpose of procuring the assent of a majority of them to the said proceedings, or that they had in any wise assented to the said proceedings.

The plaintiffs below, upon the filing of the petition of said A. Beer, moved the court for a judgment against said Marx, upon his answer, upon the ground that neither the answer nor the petition of A. Beer, showed any sufficient reason why judgment should not be rendered for them.   The court therefore gave judgment in favor of plaintiffs against said Marx, for $2,600, the amount of his indebtedness to said A. Beer & Co., and the syndic sued out this writ of error.

*Freeman* and *Dixon,* for plaintiffs in error,

Insisted that the attachment was irregular and void, because the affidavit of Beer was made by the agent, it not affirming that the plaintiffs were non-residents; and that it was erroneous to enter judgment by motion on the answer of the garnishee.

*Stone* and *Goode,* on same side.

A. Beer, syndic, first by appointment *pro tem,* of the Sixth District Court of New Orleans, then by election of a majority of the creditors of A. Beer & Co., and confirmation by said court, gave Marx, the garnishee, notice, that he as syndic was the owner of the debt due by Marx to A. Beer & Co., *before* the service of the garnishment in this case on him, as appears by Marx's answer.

The plaintiffs insisted in the court below that the debt due by Marx to their debtors, which they wished to secure by process of attachment and garnishment in this case, could not be affected by the judgment of a court of Louisiana, assigning it judicially to a syndic under a *cessio bonorum,* according to the Louisiana law. Their argument for this conclusion is, that the *cessio bonorum* of the civil law, in Louisiana, is a State insolvent law, which can only discharge the parties claiming its benefits within that State, and is not binding on the courts of any other State.   This position

we are willing to admit, but only *sub modo*. The current of decisions in England, Massachusetts and New York, (where we are most apt to look for precedents,) establishes the doctrine that if a debtor be discharged under the insolvent laws of the State or country, where the contract is to be performed or the debt paid, that discharge may be pleaded and will be good in the courts of any other State or country, (of course under the same general government,) where the contract may be attempted to be enforced. The decisions of the Supreme Court only seem to conflict on this subject, when we leave out of view that controlling principle that the law of the country where the contract is to be performed, must govern whenever that contract is sought to be enforced; and we can see no distinction between a case where a debt could not be recovered on grounds of particular state policy in Louisiana, and a case where the debtor was discharged under their State laws—always provided the contract is made to be performed within the State. We will only refer to the cases of *Smith* v. *Smith*, 2 Johns. R. 235, and 12 Ib. 141, on this point, though there are numerous cases to this effect.

But it is contended by the plaintiffs that it does not appear that the notes on which they obtained judgment against their debtors were made payable in Louisiana. That is true, but the debt due by the garnishee to A. Beer & Co., was payable in New Orleans, Louisiana, and he is in this proceeding under our foreign attachment law, the *substituted debtor* of the plaintiffs. This must be so for the reason that no valid general judgment can be had in this proceeding against the non-residents, A. Beer & Co., that is, a judgment on which a *fi. fa.* could issue, or which would be the basis of any suit in any other State, or of any proceedings except a *venditioni exponas*, to sell the specific property attached, or to collect the amount appearing to be due from any garnishment. So that at last it is only a proceeding and judgment *in rem*. The court then in such a case, has jurisdiction of the cause of action only to the extent of that *res* or thing attached or so secured, and in the case at bar, where was this debt of Marx, due to plaintiffs as they contend after garnishment, payable? Why in Louisiana, of course, because the courts could not by mere process of attachment and

garnishment, change any of the terms of the contract, of which the place of performance is a very essential one. If Marx could have avoided the payment of the debt if sued in Louisiana, on any ground of public policy not applicable to it in this State, he could still avail himself of it here, because the contract was to have been performed there. Then, if Marx is indebted to plaintiffs as the substituted debtor of them, in place of A. Beer & Co., then to the amount of his indebtedness to A. Beer & Co., the debt of them to plaintiffs is to be paid in New Orleans, and under the rule we contend for, belongs properly to the claimant, A. Beer, syndic.

But we insist that the case should not turn on the question whether the discharge of A. Beer & Co. by the judgment of a competent court in Louisiana under a local insolvent law there, would operate a valid discharge to A. Beer & Co. out of that State. We prefer putting the case on *our* attachment laws solely. Marx then was indebted to A. Beer & Co. in New Orleans, Louisiana. Suppose it had been by note negotiable, and when Marx was garnished in this State, he had answered that A. B., of New Orleans, had previously given him notice that he (A. B.) was the legal owner and holder of his note. We conceive such an answer would most effectually have prevented a judgment against him as garnishee, because he would not have been a debtor to the plaintiffs' debtor at the date of service of the garnishment. So is it here. The transfer in the case supposed would have been made by the voluntary and unaided act of A. Beer & Co. under the recognized law of Louisiana; in the case at bar the transfer is made under the same laws—voluntarily by his (Marx's) creditors, with this only difference, that the Sixth District Court of New Orleans, La., aided them in making the transfer. In either case the transfer is complete and legal, and in either case the creditors of Marx (A. Beer & Co.,) would have parted with all their interest; and Marx ceased entirely to be their debtor, so much so that a receipt to him by them after notice of the transfer, would avail him nothing in a subsequent suit by the assignee. Now the only question to solve, it strikes us, is—had the Sixth District Court of New Orleans jurisdiction over the debt due from Marx in Mississippi. We insist that it did have such jurisdiction and control over it as to

fix its ownership, because the original owner was personally within its jurisdiction, and the debt was payable there, although it had not such jurisdiction over the debtor, Marx, as to enforce the collection of the debt, unless he took himself or his property within its jurisdiction. It cannot be that the question of ownership of the debt due by Marx is to be determined by the first judgment obtained in this State, where Marx resides. The same had as well be determined in the same manner in the case put of a voluntary and unaided transfer by A. Beer & Co. The answer of the garnishee and the claim of the Syndic and the record used as evidence, show that the question of ownership of this debt was decided and fixed in A. Beer, syndic, before the service of the garnishment on Marx, and that he was not indebted to A. Beer & Co. at the date of its service.

*W. P. Harris*, for defendant in error.

By the laws of Mississippi, debts due by persons residing here to non-resident creditors, have a local *situs* as property here, and as such are liable to seizure by the garnishee process. Hutch. Code, 801, 802, 803. Such debts are considered as property situated in Mississippi, and liable to the claims of *non-resident* as well as resident creditors. Non-resident creditors being, by the act of 1848, placed upon the footing of resident creditors *in all respects*, having the same rights to all the provisions of the attachment laws. Hutch. Code, 802, 803, 823, §§ 10, 11, 12.

Such is the attitude of the attaching creditors under our laws. It is proper in this connection to advert to the attitude of the party contesting their rights under the insolvent laws of Louisiana.

The proceeding, as exhibited by the record from the Sixth District Court of Louisiana, was under the insolvent laws of that State passed in 1817 and 1826, to be found in Bullard & Curry's Digest, 487-495. The insolvent system in Louisiana, in some of its main features, is like the late Bankrupt Law of the United States. A debtor may make a voluntary surrender to the court for his creditors, or his creditors may proceed against him to compel a surrender of his property. In the one case, the proceeding

is *in invitum* as to the debtor; in the other it is *in invitum* as to the creditors. The surrender, whether *voluntary* or *forced*, vests the property within the jurisdiction of the State in the creditors. It is true, in case of a voluntary surrender, a *majority* of creditors in *amount* must assent to the cession and to the discharge of the debtor, but their assent against the opposition of the minority of creditors is sufficient. The proceeding, therefore, is in its nature compulsory as to creditors; the minority being bound to submit to the discharge, unless they can establish fraud.

The title which the creditors acquire, is not by contract with the debtor, but by the operation of the local insolvent law. The debtor assents, but assents on account of the advantage he obtains over his creditors. On filing his petition, all judicial proceedings against him are stayed, and he obtains a discharge from *all* his creditors, though *only* a *part* of them may consent. Beyond all doubt, such a proceeding falls *without* the rule which regards *voluntary assignments* or transfers of property *by contract in pais*, valid in the place where made, as valid and binding everywhere.

The acquisition of the property is not by contract, but by virtue of the local insolvent law, which, as to creditors who are *citizens of other States*, and do not assent or *voluntarily submit thereto*, and as to property *not locally situated* in Louisiana, have no validity. This is the settled law of this country, as will appear from the authorities hereafter cited. Viewed as a *judicial proceeding*, it does not bind the attaching creditors, who, by the Louisiana record, are shown *not to be citizens of Louisiana*, but citizens of Pennsylvania, having no notice except such as is mentioned in *Ogden* v. *Saunders*, "a placard at Leghorn or a proclamation on the shores of Leith." As a proceeding *in rem*, it binds only the property actually situated in Louisiana.

We give full faith and credit to the record from the Louisiana court, but look into it to see whom it *binds and what* it binds; giving effect to it, to the extent of the *jurisdiction* and no further.

The doctrine asserted by writers on public law, that the domicil of the party is the constructive *situs* of his personal property, wherever *actually* situated, is true and applicable to a certain extent and for certain purposes only. In contests between parties

claiming under conflicting jurisdictions, as in this case, the constructive *situs* must yield to the *actual situs.* It must yield here, because our legislature has fixed upon debts, due to non-residents by parties residing here, the character of property locally situated in Mississippi and subject to our jurisdiction. Even without our legislation, this is the general doctrine of the courts of the United States. Perhaps a transfer by contract made elsewhere, would, in the absence of undue preference or fraud, and if made prior to the levy of the attachment, prevail; but the transfer in this instance was by a judicial proceeding, based on a State bankrupt or insolvent law, which has no extra-territorial validity. This is the established law in the United States. Judge Story thus sums up the result of judicial decisions : " *State insolvent laws,* discharging the obligation of *future* contracts, are to be deemed constitutional. 1st. They apply to all contracts made *within* the *State* by *citizens* of the *State.* 2d. That they *do not* apply to contracts made within the State between citizens of the State and a citizen of *another State.* 3d. They do not apply to contracts not made within the State. Still, however, if a creditor *voluntarily makes himself a party* to the proceeding, under an insolvent law of a State, which discharges the contract, and *accepts a dividend* declared under *such law,* he will be bound *by his own act,* and be deemed to have *abandoned his extra-territorial immunity.*" This summary of the law will be found to be strictly accurate. He cites *Ogden* v. *Saunders,* 12 Wheat. 358, and *Clay* v. *Smith,* 3 Peters, 411; the last case arose under the very insolvent laws now invoked in this case.

The law, as thus settled, has been fully recognized in Louisiana by the courts of that State. *Oliver* v. *Towns,* 14 Martin, 100; 4 Annual Rep. 447; 5 Ib. 271.

Chancellor Kent says, (2 Kent, Com. page 504,) that "it may be considered as part of the settled jurisprudence of this country, that personal property, as to creditors, has a locality, and the *lex loci rei sitae* prevails over the law of the domicil; that foreign laws have no extra-territorial operation and that a *prior* assignment in bankruptcy under foreign law will not prevail over a subsequent attachment by an American creditor." The English doctrine on

Beer *v.* Hooper et al.

this subject, after great consideration, has been generally, and we may say uniformly and universally, rejected in this country. The point as to the *situs* of the debt and the jurisdiction over it, with reference to State insolvent or bankrupt laws, has been definitely settled in accordance with the doctrines asserted by Kent and Story.

The opinion of Mr. Pettigrew, to be found in 3 Howard, Rep. Sup. Ct. U. S. 487, contains the general doctrine on the subject. The court's attention is called to this opinion.

The precise point involved here, to wit, whether the subsequent attachment shall prevail over the assignment under the insolvent laws of another State, is placed beyond controversy by the authorities which are here cited.   2 Kent, Com. 504; 2 Story on the Constitution, 48, § 1108; Story on Conflict of Laws, 346, 347, 348; *Blake* v. *Williams*, 6 Pick. 312; *Baker* v. *Wheaton*, 5 Mass. 509; *Watson* v. *Bourne*, 10 Ib. 339; *Milne* v. *Morton*, 6 Binney, 353; *Ingraham* v. *Guyer*, 13 Mass. 146.

The courts of Louisiana hold that, as to creditors residing in other States, a discharge under their insolvent laws is not binding even in Louisiana.   See 5 Annual Rep. 271.   This being the established doctrine, the plaintiffs in the attachment were not affected by the proceeding set up by the garnishee and claimant, and property here subject to our jurisdiction did not pass under the insolvent laws of Louisiana as against non-resident creditors, and was, therefore, subject to seizure.   See *Harrison* v. *Sterry*, 5 Cranch, 289, Marshall's opinion,   See also, note (*e*), 506 new edition, and 408 old edition, 2 Kent, Com., and authorities there cited.

The judgment of the court below is fortified by a weight of authority which would seem to defy controversy.  .

HANDY, J., delivered the opinion of the court.

The first ground of error insisted upon is, that the affidavit and bond are insufficient to support the attachment.

The objection to the affidavit is, that it is made by the plaintiffs' attorney, and does not show that the plaintiffs are non-residents of the State or of the county where it was made.   This was required by the provisions of the attachment law.   Hutch. Code, 802, § 7.

But the general statute authorizes attorneys to make affidavits that may be necessary in all cases either in the institution or pro-. secution of any suit. Hutch. 845. And the first statute above referred to authorizes the execution of the bond by the attorney. Hutch. 802, § 8.

Another objection to the proceedings is, that an issue was not made up and tried before a jury, traversing the answers of the garnishee and of the plaintiff in error, who appeared and claimed title to the debt attached in the garnishee's hands. Under the circumstances of the case this was unnecessary. The plaintiffs, in attachment moved for judgment against the garnishee upon the facts stated in his answer and that of the plaintiff in error, upon the ground that the facts stated showed no sufficient reason why the judgment should not be rendered for the plaintiff. This was equivalent to a demurrer, and presented a question of law to be decided by the court, and not a question for a jury. It was properly made upon motion for judgment upon the answers, because, in proceedings of this nature, not being governed by the rules of pleading according to the rules of the common law, and partaking rather of the nature of proceedings in chancery, a demurrer was not necessary to test the legal sufficiency of the defence set up in the answers.

The last ground of error is, that the debt attached was not liable to the judgment rendered against the plaintiff in error, because, under the proceedings of insolvency in Louisiana, it had been passed to the plaintiff in error as syndic for his creditors, before the institution of the attachment in this case.

It appears by the record that the attaching creditors in this suit were not citizens or residents of the State of Louisiana; and it is well settled in this country, that the insolvent proceedings in that State could not affect the debt due the insolvents in this State so as to debar the plaintiffs from suing out their attachment and levying it upon the debt. The attachment was brought before the syndic had taken any steps by suit in this State, to assert his claim upon the debt, in virtue of the insolvent proceedings in Louisiana; and by the well-established doctrine in this country, the plaintiffs, not having assented to these proceedings, had the right to subject

the debt due them in this State by the insolvent, to their attachment.    Story's Confl. Laws, 346; 2 Kent, Com. 407, 408.

Let the judgment be affirmed.

A re-argument was asked for, but refused.