JACOB H. EINER et al., Respondents, v. WILLIAM BESTE et al., and JOSEPH DEYNOOD, INTERPLEADER, Appellants.

*Conflict of Laws—Sale—Assignment—Insolvent.*—The bankrupt and insolvent laws of each State or nation bind and affect their own citizens, and as against them will be enforced by the courts of other States when questions arise as to the title conveyed under such laws. Therefore, where plaintiffs and defendants were citizens of Louisiana, and the defendants had made an assignment of their property in accordance with the laws of that State for the benefit of their creditors, and a syndic or assignee had been appointed to collect and distribute the assets of the insolvents, one of the creditors, a citizen of, and residing in that State, cannot secure a preference over the remaining creditors in his own State by process of attachment against the the property and assets of the insolvents in this State. As against such attachment, the title of the assignee of the insolvents will prevail.

*Appeal from St. Louis Circuit Court.*

The facts are fully stated in the opinion of the court.

The following are the instructions asked by the interpleader and refused by the court:

1. The court declares the law to be, that a foreign assignment will operate wherever personal property of the assignor is found, according to the law of the assignor's domicil, except as against the citizens of the State in which such property may be found.

2. The court declares the law to be, that if it has been established by the evidence that the plaintiffs and defendants were, at the time of the institution of the writ of attachment by Einer and Tredenthal against Beste and Grima, domicil-

iated at New Orleans, Louisiana, and that the debts—the subject matter of the attachment suit—were there contracted, plaintiffs cannot, by a suit in the courts of Missouri, in regard to the personal property of their debtors in this State, obtain a preference over the other creditors, of which they would be debarred by the laws of Louisiana.

3. The court declares the law to be, that if it has been established in proof that the plaintiffs and the defendants in this suit were, at the time of the institution of this suit, residents of New Orleans; that the subject matter of the suit were debts contracted in New Orleans; that plaintiffs had notice of the proceedings instituted in the courts of New Orleans by William Beste, one of the defendants, against his creditors, and whereby Joseph Deynood, interpleader herein, was appointed syndic, and that by the laws of the State of Louisiana, from the date of such proceedings by Beste against his creditors, all proceedings by the creditors against the personal property of the debtor were suspended, then the interpleader is entitled to recover.

*A. J. P. Garesché*, for defendants, Beste & Grima.

The parties agree that errors may be assigned as if upon writ of error in the original suit.

I. The answer of the defendants showed a good defence, and the court erred in striking it out. (Sto. Conf. L., § 331–5, p. 560, and § 338, p. 567; 3 Sto. Com. Const. 255, § 1384; Pars. Merc. L. 316; Hempstead v. Reeve, 6 Conn. 491; Donelly v. Corbitt, 7 N. Y., 1 Seld., 504; Brown v. Collins, 41 N. H. 405; Stevens v. Norris, 10 Foster, N. H., 470; Tibbatts v. Stone, 26 Me. 112; Very v. McHenry, 29 Me. 206; Bailey v. Deale, 1 Harring. 367; Tabor v. Howard, 5 Harring. 42; Babcock v. Weston, 1 Galli. 168; Betts v. Bagley, 12 Pick. 580; McKeim v. Marshall, 1 Har. & J. 101; Williams v. Guignard, 2 How., Miss., 722.)

II. As to the objection that it is *lis pendens* in the courts of another State, see Boxley v. Dinah, 16 Penn. 242; Bowles v. Bowley, 41 Me. 548.

*A. J. P. Garesché*, for interpleader.

I. An application under the insolvent laws of Louisiana may be voluntary or involuntary. (Civil Code, art. 2168.)

After a cession, the property of the debtor cannot be seized or attached. The creditors cannot refuse the surrender, and by a consent of a majority the debtor can be discharged. (Civ. Code, art. 1271, 1272, 1273, 1274.) As to the effect of the *cessio bonorum*, see Elmes v. Estevan, 1 Mart. 193 ; David v. Hearn, 1 Mart. 207 ; Bermudez v. Ibañez, 3 Mart. 40 ; Cox v. Zeringue, 4 Mart. 264 ; Menard v. Pierce, 3 Mart., N. S., 375 ; Clark v. Oliver, 4 Mart., N. S., 625 ; 6 Mart., N. S., 416.)

II. The surrender transfers the property as completely as any other mode of alienation. (Schroeder v. Nicholson, 2 La. 354 ; Muse v. Yarborough, 11 La. 531 ; Levy v. Jacobs, 12 La. 109 ; Baldwin v. Union Ins. Co. 2 Rob., La., 138 ; West v. His Creditors, 8 Rob., La., 123 ; Lawrence v. Gries, 9 Rob., La., 219 ; Smalley v. His Creditors, 3 La. 387 ; Dwight v. Simon, 4 La., An., 490 ; Rivas et al. v. Hunstock, 2 Rob., La., 187 ; Slidell v. Pritchard, 5 Rob., La., 101 ; Bethany v. His Creditors, 7 Rob., La., 61.)

III. The assignee is entitled to sue in our courts. The decisions of the common law courts, under the English bankrupt law, do not apply to the insolvent laws of a sister State. (Mulliken v. Aughinbaugh, 1 Penn., Pen. & W., 117 ; Lamb v. Fries, 2 Penn. 83 ; Blane v. Drummond, 1 Brock., Ct. Ct., 71 ; Hooper v. Tuckerman, 3 Sand., S. C., 317 ; Hoyt v. Thompson, 5 N. Y., 1 Seld., and S. C. 19 N. Y. 226 ; Sto. Conf. L. 692, § 420.)

IV. The proceedings in New Orleans operated as a transfer of the personal property here as against an attaching creditor of Louisiana, and the claim of the assignee is superior. (Sto. Conf. L. 664, § 398, § 383 ; Ang. on Ass. 65 ; Burr. Ass. 362, 2d ed. ; Black v. Zacharie, 3 How. 14 ; Van Buskirk v. Hartford, 14 Conn. 587 ; Hayden's Appeal, 7 N. Hamp. 502 ; Sanderson v. Bradford's Tr., 10 N. H. 265 ; Hall v. Board-

man's Tr., 14 N. H. 38; Warne et al. v. Morrison, 25 Vt. 601; Russell v. Tunno et al., 11 Rich., S. C., 303; Long v. Hammond, 40 Me. 211; Gardner v. Lewis, 7 Gill, 377; Wilson v. Carson, 12 Md. 77; Frazier v. Frederick, 4 Zabriskee, N. J., 166; Benedict v. Parmenter, 13 Gray, Mass., 89; Richardson v. Forepaugh, 7 Gray, Mass., 546; Lowry v. Hall, 2 Watts & Serg. 130; Speed v. May, 17 Penn. 94; Law v. Mills, 18 Penn. 185.)

V. The objection that only one partner petitioned might perhaps be a good objection if made in a Louisiana court; but if not made there, it is waived here. (Long v. Hammond, 40 Me. 211.)

*Mc Clelland, Moody & Hillyer*, for respondents.

I. The proceedings in Louisiana could have no extra territorial force, although Einer & Co. were domiciled in that State and had knowledge of the proceedings and of the appointment of a syndic.

By the constitution of the United States, art. IV., sec. 2, Einer & Co., citizens of Louisiana, have the same status in the courts of Missouri that they would have if citizens of Missouri. Aside from this and the other stipulations constituting the Union, the States are, as to each other, foreign countries, and their respective citizens only alien friends. The legislation of one State has, and can have, no force as to property in another. This question is not so much between citizens of Louisiana as between the law of that State and the courts of Missouri.

As to the legal effect of an administration granted in another State, see Goodwin v. Jones, 3 Mass. 513; 11 Mass. 313.

II. Deynood, the syndic, could not have sued the garnishee here, even if Einer & Co. had not sued. He has no greater rights as interpleader than he would have as original plaintiff in a suit against the garnishee, Thompson. (11 Mass. 24; 9 Mass. 323; 13 Mass. 145.)

III. The syndic has no greater rights than as a foreign

assignee of a foreign bankrupt. (Milne v. Moreton, 6 Binn. 353; Holmes v. Remsen, 20 John. 229, 264; Blake v. Williams, 6 Pick. 286; Harrison v. Steny, 5 Cranch, 289; 2 Kaime's Eq. 382; Ogden v. Saunders, 12 Wheat. 213, 362; Oakley v. Bennett, 11 How. 33; Sto. Conf. L., § 415, 388.)

This case was substantially decided in Bryan v. Brisbin, 26 Mo. 423.

IV. The proceedings in Louisiana were by one of the firm of Beste & Grima against the other and the creditors. One partner cannot, by a voluntary assignment, transfer the partnership assets, much less can he by an assignment by operation of law.

BAY, Judge, delivered the opinion of the court.

Plaintiffs sued defendants by attachment in the St. Louis Circuit Court, returnable to the September term, 1858, predicated upon an affidavit alleging that defendants were non-residents. A debt due defendants from a third party, in the city of St. Louis, was attached and said party summoned as garnishee. Defendants, in their answer, aver that at the time of the institution of this suit, and at the time the debt sued on was contracted, both plaintiffs and defendants were, and still are, residents of the State of Louisiana, and that the debt was contracted in the State of Louisiana. That, by the laws of said State, plaintiffs could not maintain their action for the recovery of said debt, because said defendants were insolvent, and had, before the institution of this suit, instituted proceedings in a court of competent jurisdiction in the city of New Orleans for their discharge under the insolvent laws of that State, which proceedings were still pending and undetermined.

Joseph Deynood interpleaded in the cause, claiming the property attached as the legal owner and proprietor thereof, by virtue of his appointment as syndic (a word used in the French law, answering to our word assignee) of defendants.

On motion of plaintiffs, the court below struck out the answer of the defendants. The plaintiffs, in their answer to the

interplea, deny that Deynood is the owner of the property attached, and aver a want of any knowledge or information sufficient to form a belief as to whether he had been appointed in due form of law, syndic, as stated in the interplea. And upon these issues the parties proceeded to trial, a default in the meantime having been taken against the defendants. The case was tried by the court, sitting as a jury, and judgment given against the interpleader, to reverse which he appeals to this court.

Upon the trial it was admitted that all the parties except the garnishee were residents of Louisiana, and that the debt sued on was contracted in Louisiana. It also appeared in evidence that plaintiffs had notice, before the institution of their suit, of the proceedings in bankruptcy, a transcript of which was also read in evidence. By the laws of Louisiana relating to bankruptcy the syndic is selected and appointed by the creditors, who, for that purpose, meet at a time and place specified in the order of the court. The Code defines with much particularity the powers and duties of the syndic; and after declaring that the property of the debtor shall not be liable to be seized, attached, taken or levied on by virtue of any writ of seizure, attachment or execution issued against such property, provides that the syndic shall take possession of and be entitled to claim and recover such property, and to administer and sell the same. It further declares that the surrender shall operate to discharge the debtor from all personal restraint, and to suspend all kinds of judicial process against him. Other articles of the Code are incorporated in the bill of exceptions, but it is deemed unnecessary for the purposes of this case to make any special reference to them.

The question raised by the record in this case is, whether the proceeding in brankruptcy so vested the property and effects in Missouri in the syndic as to defeat an attaching creditor residing in the State of Louisiana, but suing in the courts of Missouri.

The defendants asked several instructions contending for

the affirmative of this proposition, which the court refused to give, assuming the converse of it to be true.

The general rule that personal property has no location, but follows, as to its disposition and transfer, the law of the domicil of the owner, is universally admitted, but the rule is subject to several exceptions. It will not prevail in cases where its application would be prejudicial to the State where the property is found, or the just rights of its citizens, nor has its application been admitted in all cases of voluntary assignments for the benefit of creditors; for, when in such cases a contest has arisen between the assignee and an attaching creditor in another State seeking to avail himself of the property of the debtor in such State, the courts have generally favored the attaching creditor, upon the principle that it is the duty of the State to protect its citizens with reference to property within its jurisdiction. Nor does the rule apply, except as hereinafter stated, to cases of involuntary assignments under bankrupt laws. In England, it is true, it has been uniformly held that the operation of bankrupt laws is to vest in the assignees all the personal property of the bankrupt wherever it may be situate, and consequently that an attachment and recovery of such property made by a creditor in a foreign country after such assignment is inoperative, upon the principle that the title which is prior in point of time ought to obtain preference in point of right and law. (Story on Conflict of Laws, 408; 4 T. R., 192.)

But in this country the adjudications have been otherwise; and although we have permitted in some instances assignees of bankrupts in England to sue in our courts for the recovery of the personal effects of the bankrupt, yet it has been confined to those cases in which no right or claim to the property was set up by a citizen or American creditor, and the permission so granted was expressly placed upon the doctrine of comity, and not upon any legal or international right supposed to exist in the assignee.

Notwithstanding the want of unanimity in the early Amer-

ican cases, the rule is now considered well settled, and is thus stated by Judge Story in his Conflict of Laws, 411:

" There is a marked distinction between a voluntary conveyance of property by the owner and a conveyance by mere operation of law in cases of bankruptcy *in invitum*. Laws cannot force the will, nor compel any man to make a conveyance. In place of a voluntary conveyance of the owner, all that the legislature of a country can do, when justice requires it, is to assume the disposition of his property *in invitum*. But a statutable conveyance, made under the authority of any legislature, cannot operate upon any property except that which is within its own territory."

Parsons, in his work on Mercantile Law, 312, says:

" We hold in this country that the bankrupt and insolvent laws form a part of the law of nations in no sense and in no respect ; that they not only derive all their force from the authority of the State which enacts them, but have no force whatever—no more than any other local and municipal law— beyond the limits of that sovereignty. So, too, our courts hold that the cession of the bankrupt's assets to his assignee is not to be regarded as his own act, but rather as the result of, and effect of, his civil death. He has, as a merchant, ceased to be. He has no longer anything to do with his property, and does not possess and cannot exrcise any more right or power in respect to it than a mere stranger. And the principle on which his assets are to be gathered and distributed is the same which would be applied if he had died insolvent, and an administrator, instead of an assignee, had possession of his property. Hence, it follows that within the State where insolvency goes into effect, it operates on all the property in the same way that insolvency declared by probate would operate on the effects of a dead man—that is, only within the State where it occurs, leaving creditors under other jurisdictions to get hold of other assets if they can."

The rule thus stated, denying to the insolvent or bankrupt laws of a State any extra territorial operation, is by no means without a qualification, for upon an examination of the decis-

ions which maintain and support the rule, and upon the faith of which the principle is held to be settled, it will be found that a distinction or reservation is made with respect to parties who reside in the State where the proceeding in bankruptcy is had. The question of residence of parties seeking to appropriate the assets of the bankrupt is regarded as very material. In Milne v. Marton, 6 Binn. 353, Ch. Jus. Tilghman refers to the ruling of the English courts, wherein it is held "that if an inhabitant of England attaches the property of an English bankrupt in foreign parts, and thus obtains payment, he will be compelled to refund the money in an action by the assignee, because, residing in England, and bound by the law of his country, it is against equity that he should defeat the object of that law, which is the placing of all creditors on an equal footing."

In the same case, the learned judge says: "In this (Pennsylvania) State we have permitted *English* assignees to bring actions in the name of the bankrupt for their own use, and we have held that, *between British subjects*, a discharge under an *English* Commissioner is a bar to an action here."

In the same case, Judge Yeats remarked: "It is one thing to assert that assignees of bankrupts, under foreign institutions, should be allowed by the courtesy of nations to support suits, as the representatives of such bankrupts, for debts due to them; and it is another thing to give efficacy to these institutions, to cut out attaching creditors, although posterior in point of time, who have commenced their proceedings under the known laws of the government to which they owed allegiance, and from whom they were entitled to protection."

So in Mulliken v. Aughinbaugh et al., 1 Penn. (P. & W.) 117, and in Lowry v. Hall, 2 Watts & Serg. 130, it was held that an inhabitant of Maryland would not be allowed to attach a debt in Pennsylvania which the creditor in Maryland had assigned to obtain a discharge from arrest under the insolvent laws of that State.

So in Sanderson v. Bradford's trustee, 10 N. H. 260, the Supreme Court of New Hampshire held that a general assign-

ment of property for the benefit of creditors by a citizen of Massachusetts, in conformity with the insolvent laws of that State, will operate to transfer a debt due from a citizen of New Hampshire as against creditors of the assignor who are citizens of Massachusetts. Parker, Ch. Jus., in delivering the opinion of the court, said:

"The creditors in this case are citizens of a foreign government, (Massachusetts,) and have no particular claim to the benefit of our laws if there is any conflict between them and the laws of Massachusetts. Their demand against Bradford does not appear to have been made payable here, nor is there anything to show that they contracted with any reference to the laws of this State. Property situated in this State, or debts due here, cannot be supposed to have been the means to which they looked for payment, in any event, when the debt was contracted; and no reason suggests itself why they should stand in any better situation than creditors of Bradford who are citizens of Massachusetts."

So in Whipple v. Thayer, 16 Pick. 25—which was an assignment by a citizen of Rhode Island for the benefit of his creditors, the validity of which was questioned by reason of its conflict with the laws of Massachusetts—Shaw, Chief Justice, said:

"Without at present deciding the more general question whether this assignment, made by the owner of property, in a mode conformable to the laws of the place of his domicil, would be good against a subsequent attachment made by a citizen of this State, the court are all of opinion, that, as against a citizen of Rhode Island, the assignment was good."

The case of Daniels v. Willard, 16 Pick. 36, is to the same effect.

In Van Hook v. Whitlock, 26 Wend. 43, the Supreme Court of New York admitted the doctrine to be, that, as between citizens of the same State, the insolvent's discharge is valid, as it affects contracts made posterior to the law; but, as against citizens of other States, it is void as to all contracts wherever made.

In Beer v. Hooper et al., decided by the High Court of Errors and Appeals of Mississippi, in October, 1856, (32 Miss. 246,) plaintiff was a citizen of Pennsylvania, and sued out an attachment in the State of Mississippi against Beer & Co., of New Orleans, Louisiana, and attached a debt due to Beer & Co. from a citizen of Mississippi.

The defence set up was, that, prior to the attachment, Beer & Co. had made a voluntary surrender of their effects, (embracing the debt attached,) under the insolvent laws of Louisiana, to the Sixth District Court of that State, and that one A. Beer had been appointed syndic. Beer, as syndic, claimed the debt due by the garnishee. The attachment was taken out on the 24th of May, 1855. The surrender and appointment of syndic were made on the 21st of May, 1855. Judgment was given for the plaintiff sustaining the attachment, and the Court of Appeals affirmed it, upon the ground that the plaintiff was not a resident of Louisiana, and therefore not bound by the laws of that State, or owing any allegiance thereto.

A very late case, decided in the Supreme Judicial Court of Maine, in 1860, (Felch v. Bugbee et al., not yet reported, but published in vol. 9, p. 104, of the American Law Register,) raises the same question. The court decided that an assignment of a debtor's property, under the insolvent laws of Massachusetts, will not operate upon debts or property in Maine so as to defeat the attachment of a creditor who is a citizen of Maine made subsequently to such assignment. The learned judge, in delivering the opinion of the court, thus speaks of the rule :

" After a careful consideration of the reasonings and decisions of the courts on this vexed question, we can only say that if the question was an open one in all respects, we might incline to the doctrine that the place of making and place of performance should control, on the grounds before stated, rather than the fact of citizenship. Yet, we are forced to the conclusion that a different rule has been finally established by the Supreme Court of the United States and concurred

Einer v. Beste and Deynood.

in by most of the State courts; and we are not disposed to depart from the rule thus established. It rests entirely upon the citizenship of the party, and not at all upon the place of making or performance. It is the result of that train of reasoning which regards the insolvent laws of a State as local, having no extra territorial force so as to act upon the rights of citizens of other States; that as between citizens of the State, the discharge will bind them as to all posterior contracts wherever made or wherever to be executed; and, as to citizens of other States, it will not discharge any existing contract, although made or to be performed in the State granting the discharge. This rule is broad enough to exclude all questions arising either from the place of making or place of performance. It rests entirely in the citizenship of the parties, and treats all other matters as immaterial."

We might cite numerous other cases in which it is held that the question of citizenship is not only important but in many respects controlling, but enough has been given to show the general current of authority.

If it was an open question, we should be inclined to adopt the doctrine as founded in good sense, for we think no good reason can be urged why a creditor residing in the same State with the bankrupt, and subject to its local jurisdiction, should pe permitted, through the courts of another State, to obtain an advantage over other creditors, by seizing, through legal process, the effects of the bankrupt in such State. To do so, would be conferring upon him a right which is denied him by the laws of his own State.

In the case at bar, the plaintiffs were residents of Louisiana at the time the debt due them was contracted, and at the time of instituting the proceeding in bankruptcy, and, as admitted by counsel, are still residents of that State. The debt sued upon was contracted and made payable in Louisiana, and with reference to the local law of Louisiana. They, furthermore, had notice prior to the institution of this suit of the proceeding in bankruptcy, and their demand appears in the schedule of debts due by defendants. They cannot, there-

fore, be permitted to obtain, through the instrumentality of our courts, a priority over other creditors. A question may arise as to whether they may not be entitled to attach a part of the fund, as it does not appear very satisfactorily from the record whether the application for the benefit of the bankrupt law was made by Beste alone, or by both him and his partner; nor does it appear whether the debt attached was due Beste individually, or the firm of Beste & Grima, the answer of the garnishee being omitted in the record. These questions seem to have been overlooked upon the trial below, which makes it necessary to remand the cause.

Judgment reversed and cause remanded, the other judges concurring.