CHARLES M. THURSTON et al., Plaintiffs in Error, v. ISAAC ROSENFIELD, JR., et al., Defendants in Error.

1. *Assignment — Non-resident Creditors — Conflict of Laws.* — Comity does not require a court to enforce a contract valid according to the laws of the place where it is made, if such enforcement would result to the manifest injury or detriment of the citizens of the country where the property is situated or the claim attempted to be enforced. But where all parties to a suit are residents of another State, and defendants had made an assignment of their property, in accordance with the law of that State, for the benefit of their creditors, and an assignee had been appointed to collect and distribute the assets of the insolvents, one of the creditors, a citizen of and residing in that State, could not secure a preference over the remaining creditors in his own State by process of attachment against the property and assets of the insolvent in this State.

*Error to St. Louis Circuit Court.*

*Sharp & Broadhead,* for plaintiffs in error.

I. The real estate owned by Rosenfield, and situate in Missouri, could only be conveyed according to the laws of Missouri. The contract, it is true, was made in New York, but the property is in Missouri and under its peculiar and exclusive jurisdiction.

Thurston et al. v. Rosenfield et al.

Although, as a general proposition, a contract valid by the law of the place where it is made is valid everywhere, yet this is subject to many exceptions. 1. If the contract concern real property, the American will is firmly established that the *lex rei sitæ*, and not that of the place of the contract, is to prevail. (Story Confl. Laws, §§ 363–5 ; *id.* 424, 431.) The *lex rei sitæ* is to prevail in relation to all dispositions of immovable property. (Story Confl. Laws, §§ 445, 423 ; United States v. Jonah Crosby, 7 Cranch, 115 ; Bur. on Ass. 360.) 2. A contract even in regard to personal property, when it contravenes the law of the place where it happens to be situate, or when it is repugnant to the policy of the State, is invalid. (1 Green. 326 ; 2 Mas. 157 ; 12 Wheat. 259 ; Frazier v. Fredericks, 4 Zabriskie, 166 ; Story Confl. Laws, 244 ; 5 La. 295 ; Zipcey *et al.* v. Thompson *et al.*, 1 Gray, Mass., 245 ; Smith v. Union Bank of Georgetown, 5 Pet. 518.) The case in 1 Gray, 245, was the case of an assignment made in New York giving preferences of property in Massachusetts, where by law such preferences were invalid. The court, in delivering its opinion, says : "The law of New York *proprio vigore* cannot obtain here. It derives its effect only from the will of comity, and that will refuses to give force to the laws of other States which directly conflict with the policy of our own. No comity can require us to give force to an assignment made in another State which is not only against our well-settled policy, but against our direct legislation." Judge Story says : "In regard to voluntary assignments with preferences, they must, as to their validity and operation, be governed by the *lex loci contractus*. But it is a very different question whether they shall be permitted to operate upon property locally situated in another country, whether movable or immovable, by whose laws such a conveyance would be treated as a fraud upon the unpreferred creditors." (Story's Confl. of Laws, ed. 1852, p. 423 ; Bur. on Ass. 366.)

If this assignment had been made in Missouri, the provision in the deed giving preferences would be void. In other words, such contracts are in violation of the public policy and against the express law of Missouri. Will our courts enforce it ? It is a

very narrow view of the subject to say that our own statute only applies to contracts made in Missouri. This is true. But it declares what the laws of Missouri are ; and the property being in this State, the courts of Missouri will give force and effect to the contract according to those laws. If the plaintiffs were citizens of this State, there would be no hesitation about it, for it has been so decided. (Bryan v. Brisbin, 26 Mo. 423.) But we see no reason why a stranger should be placed in a worse condition than one of our own citizens.

In this case it appears from the petition that the attachment was levied on the real estate on the 24th, and the deed of assignment on the 25th of May, 1866, one day after. The attachment was a lien to a certain extent on the property, and places the plaintiffs on the same footing with a resident creditor. (5 La. 295.) This lien was liable to be destroyed by the subsequent recording of the deed of assignment, but it gave the plaintiffs a standing in court which ought to give them the right to ask the enforcement of the contract according to the laws of Missouri.

*Gantt*, for defendants in error.

I. Defendants' deed of assignment must be executed, as far as the administration of the fund is concerned, according to the rights of the parties to it, as ascertained by the law of the place where it was made, and of which all the parties now attempting to challenge it are residents. The provisions of our statute touching assignments (R. C. 1855, p. 210) which were in force when this assignment was made were intended as a substitute for an insolvent or bankrupt law, and the operation of the deed of assignment made in New York must be tested by the law of New York. To the extent that it conveys real property in this State, it must, of course, be conformable to our statutes. But there is no contest respecting the passing of this title to the assignees. The only dispute is as to the trusts with which the legal title is clothed. The question is, to whose use does this title inure ? Defendants in error say that the money arising from reducing the trust fund into money must be applied *secundum formam facti*. The plaintiffs deny this, alleging that the provisions of the deed on

Thurston et al. v. Rosenfield et al.

this point are nullities by force of our statute respecting assignments. Turning to that act to ascertain what it declares on this head, we see that the 39th section of the act applies in terms to assignments made " hereafter " in this State. It was the first legal provision by virtue of which preferences in favor of selected creditors were forbidden in Missouri. Repeatedly in the absence of such prohibition the courts of this State have recognized the validity of such preferences. In other words, they have declared that there is no principle of natural equity known to the system of jurisprudence of this country which militates with the giving of such preferences. It results, then, that preferences are valid unless they are forbidden by our statute; and they are not forbidden by our statute unless the deed of assignment was " made in this State" after the act of 1855 took effect, and while it was in operation. As it is part of the case that the deed of assignment was not " made in this State," it seems impossible to render the point under examination more clear than it is upon its mere presentment.

II. Our statute on the subject of assignments was only intended to govern the administration of the effects of an insolvent resident in Missouri, or at least having creditors residing here. If persons residing elsewhere, and owing debts to persons not residents of Missouri, make assignments elsewhere, our courts will only look into them so far as they affect real estate in Missouri. If they are competent to convey the title to such real estate, no contest respecting the administration of the fund arising from the conversion of the real estate into money will be entertained in this State, on the ground that the mode of its distribution among a number of contending creditors is provided by the deed of assignment and recognized by the law of the State where the deed was made. Although, in its broadest terms, and indeed according to the natural import of the language employed, the first section of the act embraces every mortgage, every deed of trust, etc., such has never been the construction which the act has received. It has been held to mean only such assignments as are made in view of insolvency; such as, in the absence of a bankrupt law, may partially supply the place of such legislation.

31—VOL. XLII.

But such an act, intended to form a substitute for an insolvent or bankrupt law, has no application to cases where the deed was executed abroad, where the insolvent is a non-resident, all his creditors non-resident; and the only circumstance giving our courts any hold of the matter is that the non-resident held land in Missouri.

By the scope of the whole legislation on this subject, from 1841 (Sess. Acts 1840–1, p. 13 *et seq.*) to 1855, it is plain that assignments made by an insolvent, or debtor in failing circumstances, who resides here, are the only cases for which our statutes make provision. The language employed in section 39, p. 210, R. C. 1855, industriously uses the expression "hereafter made in this State." Though this is the first time when this marked qualification occurs in terms, it is submitted that the inference of such a qualification existing antecedently and inherent, in the nature of the thing, is irresistible. It never was the purpose of the Missouri Legislature to determine how a resident of New York, owing debts to residents of New York and New Jersey, and making there a disposition of his property situated in various places, and among others in Missouri, should be affected by the *lex loci rei sitæ*. The expression found in the thirty-ninth section contains a revelation of the purpose of the legislature, if it was doubtful before, which we deny. It contains the key of the statute. Indeed, just as our legislature did not purpose to lay down rules for the administration of the assets of non-residents among non-residents, our courts refuse to take notice of an assignment made by a non-resident when injuriously affecting a creditor residing in Missouri. (Bryan v. Brisbin, 26 Mo. 423.) But a citizen of the State in which a non-resident insolvent is found will not be permitted, even as against the claim of his statutory assignee, to seize his property happening to be found in the State and subject it to attachment. (Einer v. Beste, 32 Mo. 240.)

WAGNER, Judge, delivered the opinion of the court.

This was a bill in equity to marshal the assets of Isaac Rosenfield, an insolvent, who had assigned and transferred all his prop-

erty, both personal and real. Having failed in business in New York, he made a voluntary assignment of his effects, including certain real estate situated in the city of St. Louis, in which certain creditors were preferred. The parties were all residents of New York and New Jersey, and the assignment was valid by the laws of New York where it was executed, but would have been void if made in this State under our statute. The plaintiffs here have a judgment against the insolvent debtor, but it has no priority of lien over the title vested in the assignees; and they insist that the assets arising from the sale of the realty in this State should be distributed *pro rata* and in accordance with our statute. The deed of assignment is regularly executed and acknowledged, so as to be a good and sufficient conveyance to pass the title to real estate in this State. The only question submitted, therefore, is whether the assignment is to be governed by the laws of Missouri.

This proceeding was commenced under the statutes of 1855; and by the thirty-ninth section of the assignment act, as it then existed, it is provided that "every provision in any assignment hereafter made in this State providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof." The general rule seems to be well settled that personal property is transferable according to the law of the country where the owner is domiciled; but immovable or real property must be transferred according to the *lex rei sitæ*.

The law of one State cannot, *proprio vigore*, have any force or effect or territorial operation beyond its own limits; and whatever vitality it may obtain in another State is owing solely to the principle of comity. Courts of justice are accustomed, on the grounds of comity, to examine into and enforce contracts made in other States, and carry them into effect according to the laws of the place where the transaction originated — subject, however, to the exception that they will not execute them where it would be against public policy or injurious to their own citizens. In a note to 3 Dallas, 370, Huberus is quoted, where he lays down

these maxims : " 1. The laws of every empire have force within the limits of that government, and are obligatory upon all within its bounds. 2. All persons within the limits of a government are considered as subjects, whether their residence is permanent or temporary. 3. By the courtesy of nations, whatever laws are carried into execution within the limits of any government are considered as having the same effect everywhere, so far as they do not occasion a prejudice to the rights of the other government or its citizens." Mr. Justice Cowen, in a very full and elaborate note to the case of Andrews v. Herriot, 4 Cowen, 510, deduces the following doctrine : " That the law of a place where the contract is made or to be performed is to govern as to the nature, validity, construction, and effect of such contract ; and, being valid in such place, it is to be considered valid and enforced everywhere, with the exception of cases in which the contract is immoral or unjust, or which the enforcing it in a State would be injurious to the rights, the interest, or convenience of such State or its citizens."

In Bryan v. Brisbin, 26 Mo. 423, an assignment for the benefit of creditors was executed in Minnesota, making preferences in favor of certain designated creditors, and was valid by the laws of that State ; it was held that it would not be enforced by the courts of this State in opposition to the claims of a creditor resident here, who had attached the property previous to notice of the assignment.

In the very recent case of Guillander v. Howell, in the New York Court of Appeals (35 N. Y. 657), the action was for the detention and conversion of some boilers. It appeared that the firm of Boardman & Co., residing and doing business in the city of New York, failed in December, 1857 ; and then, in that city, made a general assignment to the plaintiff, also a resident of that city, for the benefit of creditors, giving preferences. The assignors, at the time of the assignment, had some steam-boilers in New Jersey, which had been manufactured for them by the defendants, and for which they were then indebted to the defendants. After the assignment, the defendants, residents of New Jersey, sold the steam-boilers, under proceedings commenced by

foreign attachment against the assignors in New Jersey, to satisfy the demand. Plaintiff demanded the boilers, and the defendants refused to deliver them. It was shown on the trial that an assignment giving preferences was void in New Jersey by the laws of that State. The court decided that the property, being situated in New Jersey, was subject to the local laws of that State, and that the assignee could not recover.

So, in Zipcey v. Thompson, 1 Grey, 243, it was held that no comity could require the courts of one State to give force to an assignment made in another State, which was not only against their well-settled policy, but against their direct legislation, and the effect of which would be to give preference to citizens of other States over those of their own. The above cases all proceed on the idea that comity does not require a court to enforce a contract valid according to the laws of the place where it was made, if such enforcement would result to the manifest injury or detriment of the citizens of the country where the property is situated or the claim attempted to be enforced.

Every State has the indisputable right to pass laws fixing the status and regulating the disposal of property within her own jurisdiction; and no principle of comity can be allowed to interfere with either her express legislation or what may be deemed sound policy for the protection of her own citizens.

But there is no question arising here between those claiming under the assignment and our own citizens. The parties are all non-residents, and the claimants have no lien springing out of our own laws for which they seek protection. They do not claim the property in specie, nor set up and assert any prior right; but they ask that assets accruing from the sale of the lands may be marshaled, and that they may be permitted to receive a *pro rata* share.

The case, then, presents the simple question of an assignment made in the State of New York, valid by the laws of that State, where the parties are all within the same jurisdiction, except the assignor; and certain of the creditors come here and attempt to defeat the operation and policy of the assignment by an appeal to our laws. In the case of Einer v. Beste (32 Mo. 240), this

court, after a very thorough review of the authorities, decided that where the plaintiffs and defendants were citizens of Louisiana, and the defendants had made an assignment of their property in accordance with the laws of that State, for the benefit of their creditors, and an assignee had been appointed to collect and distribute the assets of the insolvents, one of the creditors, a citizen of and residing in the same State, could not secure a preference over the remaining creditors in his own State by process of attachment against the property and assets of the insolvents in this State. Whilst, owing to the peculiarities of the code of Louisiana in respect to proceedings in, insolvency, the case may not be regarded as absolutely in point, the analogy is cogent, and it must be considered as a strong authority here. The statute refers to assignments made in this State; but had other rights attached, and the interests of our own citizens intervened, I should not be inclined to give it such a narrow construction. The obvious policy of the law was to deny preferences in this State; and it never could be endured that a foreign assignment, made directly in opposition to our legislation, should have the effect of giving an advantage to non-resident creditors to the injury of our own citizens. But as the case presents no such question, we think comity requires and justice will be subserved by holding the assignment good according to the law of the place where it was executed.

The judgment of the court below, therefore, holding this view of the law, will be affirmed. The other judges concur.