MORRIS WEIL, Appellant, v. BANK OF BURR OAK, Defendant; W. S. CANAN, Receiver, Respondent.

Kansas City Court of Appeals, May 30, 1898.

1. **Receivers:** INTERSTATE COMITY. A receiver appointed in another state may, under a rule of comity, maintain an action in this state.

2. **Citizenship:** COMITY. Such action will not be permitted to be brought against a creditor citizen of this state. Comity will not be applied as against a citizen of the state where the action is brought. It will be applied against the citizens of the state where the receiver was appointed as well as all other foreign states.

3. **Voluntary or Involuntary Proceeding.** These rules apply whether the receivership is the result of voluntary or involuntary proceedings.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

ELLIS, REED, COOK & ELLIS for appellant.

(1)   Can a receiver appointed under an order of a court in another state, and having no other claim or right to invoke the aid of the courts of this state, sue in the courts of Missouri to recover property claimed as belonging to the state of which he is receiver where such suit involves the rights of parties other than those to the suit in which the receiver was appointed? Appellant contends that he can not. Ins. Co. v. Needles, 52 Mo. 117; Stockbridge v. Beckwith, 6 Del. Ch. 72; s. c., 33 Atl. Rep. ——; Moseby v. Burrow, 52 Tex. 396; Booth v. Clark, 17 How. 322; Hazard v. Durant, 19 Fed. Rep. 471; Bingham v. Ludington, 12 Blatchf. 237; Ins. Co. v. Taylor, 2 Robt. 278; Bartlett v. Robbins, 53 Md. 484; Humphreys v. Hopkins, 81 Cal. 551; s. c., 15 Am. St. Rep. 76; High on Receivers, sec. 239; Wharton, Conflict of Laws; sec. 390 B; Rorer on Interstate Law, 295; note to 6th Am. St. Rep. 189; Robertson v. Staed, 135 Mo. 135; s. c., 36 S. W. Rep. 610.   (2)   Does the attachment of personal property in Missouri on a writ issued by our circuit court, in behalf of plaintiff resident in Nebraska take precedence over a claim asserted by a receiver appointed prior to the levy of such attachment by an order of a district court of the state of Kansas, where such receiver has never had possession and where no proceedings have been taken in Missouri for an ancillary receivership? Appellant contends that such attachment does take precedence.   Stockbridge v. Beckwith, *supra;* Catlin v. Wilcox S. P. Co., 123 Ind. 477; Bryan v. Brisbin,

26 Mo. 423; Hunt v. Ins. Co., 55 Me. 290; Taylor v. Ins. Co., 14 Allen, 353; Paine v. Lester, 44 Conn. 196; Barlett v. Robbins, *supra;* Rhawn v. Pearce, 110 Ill. 350; Townsend v. Coxe, 151 Ill. 62; Moseby v. Burrows, *supra;* Bank v. Lacombe, 84 N. Y. 367; Humphreys v. Hokpins, *supra.* (3) Is a suitor, though a resident of Nebraska, who avails himself of the courts of Missouri, and invokes their laws and protection to his aid, to be treated as a citizen of Missouri, and to be accorded the same measure of right and priority in contests over property as against a resident of Kansas as though he actually resided within the limits of the state of Missouri. Appellant contends that such a suitor is virtually a resident of Missouri. Thurston v. Rosenfield, 42 Mo. 474, 480; Bank v. Lacombe, *supra;* Barth v. Bacchus, 140 N. Y. 230; Kellar v. Paine, 107 N. Y. 83, 90; Paine v. Lester, *supra;* Catlin v. Wilcox S. P. Co., *supra;* Constitution of United States, art. 4, sec. 2. (4) Should the courts of Missouri, under the facts involved here, make a distinction between a voluntary conveyance of property and an order of court issued *in invitum,* putting same in possession of its officers? Appellant contends that there is such distinction; that the former passes the title and is everywhere respected; that the latter conveys no title within itself, and has force only throughout the territory within reach of the court. Story, Conflict of Laws, secs. 411, 412, 414; Catlin v. Wilcox S. P. Co., *supra.*

PORTERFIELD & PENCE for respondent.

(1) The cases which deny the right of a receiver appointed by the courts of one state to sue in another might now be said to be obsolete. The comity existing between the several states, and which is the law of the several states, permits a foreign receiver to sue and

defend in all courts of other states than that in which he is appointed, and to enforce his rights as receiver in all cases except where the rights of the citizens of the state of the forum are prejudiced thereby, or where it would be in contravention of the policy of such state. Smith on Receiverships, p. 167, and cases cited; Ins. Co. v. Needles, 52 Mo. 17. Ins Co. v. Needles was afterward relied upon in the case of Glazer v. Priest, 21 Mo. App. 1; Robertson v. Stead, 135 Mo. 135; 20 Am. and Eng. Ency. of Law, 242, citing cases from nearly every state in the union. See, also, High on Receivers, sec. 241. (2) But the right of a foreign receiver to sue in this state and his title to property has been recognized by the express terms of a statute of this state. Acts of 1891, p. 68.

ELLISON, J.—D. F. Hulbert and C. D. Hulbert were doing a banking business, as partners in the state of Kansas, under the name and style of Bank of Burr Oak. Plaintiff, a resident of Nebraska, was a depositor in the bank in the sum of $800 on June 12, 1893. On that day a receiver for the bank was appointed by the district court of Kansas. Afterward, on the same day, plaintiff instituted this suit in attachment in this state and attached money and notes in the hands of the American National Bank of Kansas City, Missouri, as the property of the bank of Burr Oak. The receiver appointed in Kansas interpleaded for the property and had judgment in the trial court. Plaintiff appealed.

The first question to determine is, whether a receiver appointed in a foreign state may maintain a suit in the courts of this state concerning the property of his estate? The general rule is that as a matter of legal right he can not. Ins. Co. v. Needles, 52 Mo. 17; Booth v. Clark, 17 How. 322. The latter case has

RECEIVERS: action: interstate comity: foreign and domestic creditor: in invitum proceeding.

been followed and adopted as authority in the greater number of the states of the Union. It is the authority relied upon by one court in the case just cited. But it is clear (it is scarcely denied anywhere in this country) that in practical effect, the legal disability is without force or application, by reason of a rule of comity between the states whereby the courts, in a spirit of reciprocity, permit such foreign receivers to maintain suits outside the states of their appointment. Beach on Receivers, sec. 685; Smith on Receiverships, 167; High on Receivers, sec. 241; Gluck & Becker on Receiverships of Corp. 34.

It is fully as well settled that this rule of comity will not be applied as against a creditor citizen of the state where the remedy is sought by the receiver. Indeed every statement of the rule contains such proviso. This plaintiff, as before stated, resides in Nebraska, and being therefore neither a resident of Kansas, where the receiver was appointed, nor of this state, where the suit is brought, the important question is, will the rule of comity be applied in favor of the receiver as against him? It has been applied against the foreign creditor who resided in the state granting the receivership, on the ground that such proceedings bind all the citizens of the state in which they are taken. Gilman v. Kitcham, 84 Wis. 60; Bank v. McLeod, 37 Ohio St. 174. It has been so held in Missouri. Thurston v. Rosenfield, 42 Mo. 474; Einer v. Beste, 32 Mo. 240.

But in none of these cases, or others of the same class, is it said that the same rule would not apply, on other grounds, to a foreign creditor residing in any other state. But, in New York and other jurisdictions, it is held that the rule will *not* be applied to a foreign creditor, of common domicile with the assignee, who seeks a remedy in their courts. Such foreign creditor is put upon the same footing with the domestic creditor.

Barth v. Backus, 140 N. Y. 230; Bank v. Lacombe, 84 N. Y. 367; Rhawn v. Pearce, 110 Ill. 350; Boston Works v. Boston L. Works, 51 Me. 585. *A fortiori*, these courts would hold that *any* foreign creditor, *though not residing in the jurisdiction where the receiver was appointed*, would be upon the same footing with a domestic creditor. And so it has been held that foreign assignments *in invitum*, are inoperative as against either domestic or foreign creditors of any state. Townsend v. Coxe, 151 Ill. 62; Paine v. Lestre, 44 Conn. 196; Upton v. Hubbard, 28 Conn. 275; Catlin v. Wilcox, 123 Ind. 477. In this respect they are not in harmony with the great weight of authority. For it is not to be supposed that in nearly all statements of the rule, general though they may be, domestic creditors *only* would be mentioned, if all creditors, without distinction as to residence, were meant.

In our opinion the application of the rule in favor of the foreign receiver as against *all* foreign creditors, without regard to whether they have a common domicile with the receiver, is true comity. And such is the view of the supreme courts of Pennsylvania and New Jersey. Long v. Girdwood, 150 Pa. St. 413; Bank v. Street Co., 57 N. J. L. 336; Bently v. Whittimore, 4 C. E. Green, 462, 469. By such application we recognize and enforce the action of the court of the foreign state. We prevent a foreign creditor from acquiring any advantage here he could not obtain in the forum where the receivership was had. The whole question is based on comity—the courtesy, as it is sometimes expressed, is extended to the foreign state, and there can be no reason for refusing to extend such courtesy when the creditor who asserts rights in antagonism to the act of the foreign state, is himself a resident of a foreign state. Those courts which subordinate the attaching creditor to the right of the receiver *only* on

the ground that by having a common domicile with the receiver, he is bound by the proceedings, *are really not extending an act of comity at all*, since they are merely giving effect to the plain proposition of law, that a citizen is bound by the laws of the state of his residence.

By reason of comity, one state will recognize the title of the receiver of the foreign state against all creditors, except those of its own citizens. As to the latter it will allow them to lay hold of property not yet taken in possession by the receiver and not compel them to the inconvenience of going to the foreign state to collect their claims through the aid of the foreign court. It refuses the courtesy of comity to the foreign state only for the convenience and benefit of its *own* citizens. It will not withhold it for the benefit of the citizens of any other state, whether they be of the state, naming the receiver, or elsewhere. While the question here presented as to citizenship seems not to have been frequently considered in this much discussed subject, yet the rule has been so often stated in a general way as it is stated by Smith on Receiverships, 167, that we quote it as embodying our views, viz.: "He will be permitted to sue and defend as a foreign receiver in all the courts of other states than that in which he is appointed on the principle of comity, except where the rights of the *citizens of the state of the forum* are prejudiced thereby, or where it would be in contravention of the policy of such state." And the same statement of the law is made practically in the same words by the supreme court. We quote (italics ours): "This spirit of comity has been so generally acted upon as to create an exception to the rule, almost as well established as the rule itself. In most courts of the United States it is *only* withheld when to allow it would contravene the laws or public policy of the state, or would defeat or impair the rights of

*resident* creditors." Robertson v. Staed, 135 Mo. 135. This general statement of the law has been reiterated by authorities too numerous to set out here. Many of them are cited by counsel, while a large array will be found collected by text writers on Receiverships, and on Conflict of Laws.

The receivership here, though had at the instance of some of the parties, was not as to others, and may therefore be likened to an involuntary assignment. We are therefore asked to make a distinction which has been recognized in some jurisdictions between a voluntary and an involuntary transfer of an insolvent's property. It has been said that while the voluntary conveyance of the debtor's personal property would transfer the title to such property, wherever located, yet where the transfer was *in invitum* by operation of the law of the state where the debtor resided, it would be restricted to property within the jurisdiction of the state where the proceedings were had, on the principle that the law could have no extra territorial force. This is, strictly speaking, a correct statement. Yet like the other statement, that a receiver could not bring suit outside the territory of his appointment, it is of no practical force, since an exception to the rule has grown to such breadth as to practically displace the rule itself. The exception is, that by comity, each state recognizes the receivership of a foreign state as transferring the property within its limits whenever such transfer is not against the policy of the state, or the claim of one of its own citizens. We have already seen that no state denies the obligation of comity (resting in reciprocity and the obligation) to allow a foreign receiver (though appointed by proceedings *in invitum*) to sue in its courts for the recovery of the property of the insolvent; it is therefore absurd to say that it does not recognize a title in the receiver. For if there

no title, the right to sue would be barren of results. Story states the general rule in section 411 of his work on Conflict of Laws, but in the following section he concedes that the receiver would take the property, but subject to the equity belonging to foreign creditors and to the remedy pertaining to the foreign courts. We therefore conclude with the note to page 113 of Smith on Receivers, "That the distinction between a voluntary transfer and a transfer by operation of law is a mere legal fiction."

The result is that we must affirm the judgment and it is so ordered. All concur.