VAN HOOK and others, *appellants*, and WHITLOCK and others, *respondents*.

Where an *act of incorporation* of an insurance company contained a clause subjecting the *stockholders* of the company, at the time of its dissolution, *individually* to the *payment of the debts* of the company contracted before its dissolution, and such company had, in compliance with an act of the legislature, *assigned its property* for the benefit of the creditors of the company, (such act declaring, that upon the making of such assignment the *stockholders* should in no wise be liable for the demands of the creditors of the corporation,) and the *creditors received dividends* under such assignment: IT WAS HELD that though the act under which the assignment was made was *unconstitutional* and void, as to creditors whose demands existed previous to the passage of the act, still, that the creditors having come in and accepted dividends under the assignment were estopped, and deprived of the right of calling upon the stockholders *individually* for the payment of the residue of their debts not received under the assignment.

Whether the section of the statute *limiting the bringing of actions* to *three years*, for any forfeiture or *cause* upon *any statute* made or to be made, the benefit or suit whereof is given to the *party aggrieved*, embraces actions for *statutory liabilities*, such as the action given in this case against stockholders, or whether it is limited to actions upon penal statutes where the penalty is given to the party aggrieved, or where the statutes are penal in their nature and the remedy is confined to the party injured, *quere*.

The effect and operation of the *insolvent laws* of a state upon contracts to which the citizens of another state are parties considered.

APPEAL from Chancery. This was a bill against the respondents, *stockholders* of *The Commercial Insurance Company of New-York*, incorporated by an act of the legislature on the 4th day of April, 1805, for the purpose of charging them *individually* with the *debts of the corporation*, under the twelfth section of the act incorporating the company. The section is in these words: " And be it further enacted, that in respect to all debts contracted by the said corporation before the said second Tuesday of January, which will be in the year of our Lord one thousand eight hundred and twenty, (the time limited for the expiration of the charter,) the persons composing the said corporation at the time of its dissolution shall be responsi-

**1841.**

**Van Hook**
***v.***
**Whitlock.**

ble in their individual and private capacities, to the extent of their respective shares in the said capital stock of the corporation at that time, and no further." *Statutes of N. Y., Vol.* 4, *p.* 150, *Webst. & Skin. ed.* On the 15th July, 1814, the Commercial Insurance Company, by virtue of an order of the then Chancellor of the state, made an assignment of all their estate and property to three assignees, in pursuance of an act of the legislature, entitled, "An act respecting incorporated insurance companies in cases of their insolvency," passed 15th April, 1814,—*Statutes of* 1814, *Vol.* 3, *p.* 198. The second section of which act states the effect of such assignment as follows: " that upon the making and executing of the said assignment, *such corporation* so making the same, shall be to all intents and purposes discharged from all its debts, and all claims and demands, or liability whatsoever and howsoever, in or upon or by reason of any contract, matter or thing, existing at the time of making such assignment; and the *creditors* or persons having demands *against the said corporation* shall have their remedy for their several demands *under the said assignment only*, and the said president, directors and *stockholders shall be in no wise liable for the same*, nor in any manner responsible, except as far forth as they may have become. so by violating any of the duties imposed upon them by the respective acts by which they were incorporated, or which may have been passed concerning or affecting the same respectively." The assignees appointed by the Chancellor made three several dividends among the creditors of the company, to wit, a dividend of *twenty* per cent. on 14th October, 1814, another of *seven* per cent. on 10th May, 1819, another of *twenty* per cent. on 30th July, 1824, and another of *four* per cent. on 15th April, 1829, amounting together to *fifty-one per cent*. of the debts of the company. *On the* 9*th day of January,* 1830, *the bill in this case was filed* by William Van Hook as administrator &c., of John Patrick deceased, and by a number of other persons, in behalf of themselves and all other creditors,

who might come in and contribute to the expenses of the
suit, setting forth various demands against the company,
in favor of the complainants, for losses incurred upon ma-
rine policies of insurance, under-written by the company,
previous to the passage of the act of the legislature of 15th
April, 1814: some of which demands had passed into judg-
ment, whilst others had been liquidated by the *assignees*,
but not paid beyond the dividends above specified, which
had been *received by the complainants*.  The bill alleged,
that William Whitlock, and a number of other persons
named therein, were stockholders of the company on the
second Tuesday of January, 1820, (the day of the expira-
tion of the charter of the company by its own limitation,)
and set forth the number of shares owned by each stock-
holder.  It also alleged, that by the assignment directed
by the Chancellor, all the property of the company inclu-
ding choses in action had been assigned on the 15th July,
1814, and that the company had never since possessed any
property of any kind whatever, and concluded by praying
that an account might be taken of the amount of stock
held by the defendants respectively, and that they might
be decreed to pay their several shares of the debts due to
the complainants in proportion to the amount of the stock
owned by them.

William Whitlock and several others of the defendants,
put in a joint and several answer, in which they admit the
assignment by the company and insist that by means there-
of the *stockholders* of the company were wholly discharged
from all liability for the debts of the company; they aver
that from the time of the assignment, the company ceased
to act as a corporation, and insist that the complainants
by accepting dividends under the assignment are precluded
from resorting to the stockholders for payment of their
demands; and they say, that as to *so much of the causes
of action alleged in the bill whereof there is concurrent
jurisdiction in the courts of common law and the courts of
equity,* if such causes of action ever existed, they *did not*

1841.

Van Hook
*v.*
Whitlock.

1841.

Van Hook
v.
Whitlock.

*accrue at any time within six years* before the filing of the bill, and that they, the defendants, have not at any time within that period promised or agreed to pay the complainants, nor have the latter been under any disability to sue; and as to all *the other matters* for which the suit is brought, they say, that if they ever existed, *they did not accrue within ten years* before the filing of the bill, and that the complainants within that period have not been under any disability to sue; and they insist on the benefit of the lapse of time and on the several *acts* and *statutes for the limitation of actions*, as a full and perfect bar to the suit, the same as if they had been specially pleaded.    Similar answers were put in by other defendants, and replications were filed and proofs taken.

The case was heard on pleadings and proofs by the VICE-CHANCELLOR of the first circuit, who *held* that under the clause of the sixth section of the act of 1801, for the limitation of actions at law, requiring all actions or informations for any forfeiture or *cause* upon *any statute*, made or to be made, the benefit and suit whereof is or shall be given or limited to the *party aggrieved*, to be brought *within the space of three years* next after the cause of action accrued, and not after re-enacted, (1 *R. L.* 187, and again, 2 *R. S.* 298, § 31,) the complainants, to charge the stockholders individually, were bound to bring their suit *within three years* after the dissolution of the company in January, 1820; and that the defence was sufficiently set up in the answers to entitle the defendants to the benefit thereof at the hearing.    Upon this ground alone he decreed a dismissal of the bill.    The complainants appealed to the CHANCELLOR, who concurred in the views of the VICE-CHANCELLOR, that the bill should have been filed *within three years* after the expiration of the charter of the company; and he farther held, that though the act of the legislature of April, 1814, would have been unconstitutional and void as against the complainants, had they not recognized its validity; still, that having done so, by coming in under the proceedings

and taking their shares of the dividends from the assignees, they had deprived themselves of the right to object to the constitutionality of the act; and he accordingly affirmed the decree of the Vice-Chancellor. See the opinion of the Chancellor, 7 *Paige*, 376. The complainants thereupon appealed to the court for the correction of errors. The cause was argued here by:

*D. D. Field* and *G. Wood*, for the appellants.

*S. A. Foot* and *G. Griffin*, for the respondents.

*Points presented and argued on the part of appellants:*

I. The complainants being creditors of the Commercial Insurance Company at the time of its dissolution, the defendants, (being then stockholders of the company,) are, according to the twelfth section of the charter, responsible for the complainants' demands. *Laws of* 1805, *chap.* 72. *Laws of* 1814, *chap.* 172. *Slee* v. *Bloom*, 5 *John. Ch. Rep.* 366. 19 *John. Rep.* 456. *Brinckerhoff* v. *Brown*, 7 *John. Ch. Rep.* 217. *Penniman* v. *Briggs*, *Hopk.* 301. 8 *Cow.* 387.

II. The two points taken by the defendants, *first*, that the complainants have precluded themselves from suit by accepting dividends under the assignment; and *second*, that the complainants are barred by the statute of limitations, are both untenable, because:

As to the discharge:

1. It was not the intent of the legislature, nor of the Chancellor, who granted the discharge, to release the stockholders, from their liability under the charter.

2. If such had been the intent, still the discharge would have had no validity of itself, being granted under a law, passed after the contracts were made, and therefore in violation of the constitution of the United States, and absolutely void. *Sturges* v. *Crowninshield*, 4 *Wheat.* 122. *Ogden* v. *Saunders*, 12 *Wheat.* 213. *Boyle* v. *Zacharie*, 6 *Peters*, 635.

3. If it had no validity of itself, it could have derived none even from the express assent of the creditors, if such had been given.

4. No assent, expressed or implied to the discharge, was given by the complainants. No express assent is pretended; nor was any such assent implied, because assenting to the discharge was not a condition of taking the dividend. The discharge was granted without the assent of the creditors, and the dividends were made to all the creditors unconditionally. The complainants would have been as much entitled to the dividends, if they had expressly dissented, as if they had expressly assented. The assignees would have been bound to pay them, even if they had tendered a receipt, protesting in so many words against the discharge. There is a manifest distinction between the case reported in 3 *Peters*, 411, and this. This is the case of a void statute, because passed in violation of the federal constitution; that was the case of a discharge inoperative on citizens of another state, because over such the court or officer granting the discharge had no jurisdiction. But consent gives jurisdiction—that is, it is a renunciation of extra-territorial immunity. But consent can never legalize an act which the constitution positively prohibits.

As to the statute of limitations.

1. The causes of action against the stockholders did not accrue till the payment of the last dividend from the property of the corporation, April 14, 1829. The stockholders are not primarily liable, and are so only after failure to collect the debts of the corporate property. *Hayes* v. *Ward*, 4 *John. Ch. Rep.* 132. *White* v. *Case*, 13 *Wend.* 543. *Douglass* v. *Reynolds*, 7 *Peters* 113.

2. Even if the causes of action had accrued on the dissolution of the company, and more than the statutory period had since elapsed, the defendants were bound to set up in their answers the limitation on which they relied. They have set up the limitation of *six* and of *ten* years,

and of no other. They can therefore take advantage of no other, even if there had been one applicable to the case. *Mitford Plead.* 293.

3. This is a case of equitable cognizance exclusively. No analogy can be drawn therefore from an action at law, and the statute of limitations is not applicable to the case. *Briggs* v. *Penniman,* 8 *Cow.* 387. 2 *Story's Eq. Juris.* 478. 3 *Mason* 308. 15 *Mass.* 505, 522. 16 *Id.* 9. 19 *John. Rep.* 304.

4. But even if an action at law would lie in such a case, the statutory period has not elapsed since the dissolution of the company.

Three years is not the statutory period. The sixth section of the act of 1801 has no applicability to the case. This is not an action upon the statute, within the meaning of that section. The liability of the stockholders is not a new liability, but rather an exception from the usual effect of an act of incorporation. Without an incorporation, the stockholders would have been responsible for the whole. They receive an incorporation limited in its operation, as to their personal exemption. The cause of action referred to in the sixth section is an *offence* against a statute. The stockholders have not been guilty of an *offence* in the sense here understood. The cause of action is one, " the suit whereof is limited to the party aggrieved." The complainants are not *parties aggrieved,* in the sense here understood. 1 *R. L.* 187, § 6. 2 *R. S.* 296, § 18, *sub.* 1, § 22. 2 *R. S.* 297, § 31, *Revisers' notes.* Six years is not the statutory period. If *assumpsit* would lie in such a case, so would *debt,* and to an action of debt in such a case the limitation of six years could not be pleaded. *Bullard* v. *Bell,* 1 *Mason* 243.

*Points presented and argued on the part of the respondents :*

I. The appellants, or at least many of them, failed to produce sufficient evidence of the validity of their claims

against the Commercial Insurance Company, for which they sought to make the respondents liable. The admissions of the assignees were not legal evidence of such claims as against the respondents.

II. The claims of the appellants were barred by the statutes of limitations.

1. The answer was sufficient in point of form to give the respondents the benefit of any statute of limitations applicable to their case.

2. When the bill was filed, the claims of the appellants against the Commercial Insurance Company were barred by the statutes; and as the respondents were only sureties for the Company, they had a right to avail themselves of any defence which the Company might have urged. Nor did the payment of dividends by the assignees of the Company revive the debt. *Roosevelt* v. *Mark*, 6 *John. Ch. Rep.* 266.

3. The sixth section of the act of April, 1801, applied to the respondents directly, and barred any statutory claim against them of more than three years' standing.

4. The claims in question are statutory. They are founded directly and solely on the twelfth section of the statute incorporating the Commercial Insurance Company.

III. The respondents were released from any liability to the appellants by the proceedings under the act of April, 1814.

1. By the second section of that statute, not only the *corporation* but the *stockholders* were discharged from all debts due by the corporation, and the remedy of the creditors was confined to the funds assigned.

2. If that provision of the statute was unconstitutional, the objection was cured by the appellants coming in and making themselves parties to the proceedings, and accepting dividends from the assignees. *Field* v. *Howland*, 17 *John.* 85. *Clay* v. *Smith*, 3 *Peters* 411. 3 *Story's Comm. on the Cons.* 256. *Alexander* v. *Gibson*, 1 *Nott and McCord* 480. *Wall* v. *Court of Wardens*, 1 *Bay.* 435. *Ma-*

*ther* v. *Bush*, 16 *John.* 233. 2 *Kent's Comm.* 2d ed. 616.   1841.
*Paley on Agency* 165.

After advisement, the following opinion was delivered:

*By the* CHIEF JUSTICE. The bill in this case was filed by several creditors of *The Commercial Insurance Company of New-York* for the purpose of charging the defendants, as stockholders of the same, under the twelfth section of its charter, which declared, that in respect to all debts contracted by the corporation previous to the expiration of its charter, the persons composing the company at the time of its dissolution should be responsible in their individual and private capacity to the extent of their respective shares of stock at the time.

The several debts of the complainants had accrued before the passage of the act of April, 1814, respecting incorporated insurance companies in cases of their insolvency, of which act this company took the benefit in July of the same year, and were discharged from their debts in pursuance of its provisions. The second section of the act makes the assignment under the order of the proper officer, a full discharge not only of the corporation, but also of the president, directors, and stockholders of the company from all debts due at the time of the assignment. The complainants admit that they have received from the assignees, under the act of 1814, several dividends out of the assets of the company, amounting in the whole to fifty-one per cent upon their respective demands. The defendants mainly rely, as a defence to these claims by the creditors of the company, and as exempting them from personal liability: 1st. Upon the statute of limitations, which they set up in analogy to proceedings at law, the case not being one of exclusive equity cognizance ; and 2d. Upon the discharge of the Chancellor under the act of 1814.

I. As to the statute of limitations: A clause in the sixth section of the *R. L.* 1813, (*p.* 187,) and the like provision

continued in 2. *R. S.* § 31, (*p.* 298,) is referred to on this branch of the case. It is found in a section of our act of limitations, that relates to actions, informations, and indictments, sued out and exhibited for forfeitures upon penal statutes, and which provides, that where the forfeiture is given to the people, the limitation shall be two years; if given to any person who shall prosecute, or to the people and any such person, then one year for the person to sue; and in case of default, two years in behalf of the people after the one is ended; and then comes the clause in question, substantially as follows: "And that all actions or informations that shall at any time be sued or exhibited for any forfeiture, or cause upon any statute, the benefit or suit whereof is given, or limited to the party aggrieved, shall be sued, &c. *within three years* next after the offence or cause of action accrued, and not after." This particular clause is not found in the 31 *Eliz. c.* 5, § 5, from which the rest of the section is taken; and the reason of its insertion obviously grew out of a defect in the English statute, which omitted to provide for any limitation where the forfeiture was given to the party aggrieved, 1 *Tidd.* 14. *Willes,* 443, (*n.*) 1 *Ld. Raym.* 78. We have several penal statutes, where the penalty or forfeiture, instead of being given to the people, or common informer, is limited to the aggrieved party. There are also others penal in their nature, in which the remedy is confined to the party injured; and were it not for this provision, there would be no limitation to the period for bringing these actions. This view gives full operation and effect to the clause without claiming for it the broad construction insisted upon by the learned courts below.

I do not, however, intend to discuss the question, not regarding it material in the view I have taken of the case; but felt bound to present it for the purpose of entering my dissent to the construction attempted to be given to the clause. If it really possesses the sweeping effect claimed, for aught I see, it must present a short bar of three years

to every action, and cause of action arising out of and founded upon any statutory regulation: such as suits against heirs, executors and administrators, the presidents and other officers of corporations under the general banking law, besides many others that might be enumerated. Certainly, the suit is as completely founded upon the statute against the president of the bank, and the creditor is as much aggrieved by the non-payment of his debt by the institution, as can be predicated of the case under consideration; and if the three years' bar is applicable to the one case, I do not see how it can consistently be denied in the other. But I forbear going into the argument.

II. *As to the discharge:* As all the debts of the complainants accrued before the act of 1814, under which the discharge was granted, the act is clearly inoperative according to the doctrine of *Sturges* v. *Crowninshield,* 4 *Wheaton,* 122, *and Ogden* v. *Saunders,* 12 *Id.* 213, as impairing the obligation of the contract, unless there is some thing in the case that forbids the application of the doctrine of these cases. As I understand the final decision of the court in the case of *Ogden* v. *Saunders,* as delivered by Mr. Justice *Johnson,* it was intended to hold, that as between citizens of the same state, the insolvent's discharge is valid as it affects contracts made posterior to the law; but as against citizens of other states it is void, as to all contracts wherever made. Accordingly, a discharge in New-York, under the law of 1801, from a debt contracted in the state with a citizen of *Kentucky,* after the passage of the act was held void, and in *Shaw* v. *Robbins,* 12 *Wheaton,* 369, *n.,* a like judgment was given. A majority of the court concurred in the opinion of Mr. Justice Johnson, and have since regarded the principles there established as the settled law of the court. 6 *Peters,* 349 *and* 635.

Mr. Justice Story, in his commentaries on the constitution, thus states the result of the various decisions: 1st. That they (the state insolvent laws) apply to all contracts

1841.

Van Hook
*v.*
Whitlock.

made within the state between citizens of the state; 2d. That they do not apply to contracts made within the state between a citizen of the state and a citizen of another state; and 3d. That they do not apply to contracts not made within the state.    In all these cases it is considered, he observes, that the state does not possess a jurisdiction co-extensive with the contract over the parties, and, therefore, that the constitution of the United States protects them from prospective as well as retrospective legislation, 3 *Story's Comm.* 256.    Still I am not aware that it has been directly determined by any case in the supreme court of the United States, that the discharge would not be a bar against a citizen of another state, where the suit is brought in the court of the state in which it was granted, and upon a contract made therein posterior to the law.

But in *Clay* v. *Smith*, 3 *Peters* 411, the court held, that if the creditor voluntarily makes himself a party to the proceedings under a state insolvent law which discharges the debt, and accepts a dividend declared under the law, he will be bound by his own act, and be deemed to have abandoned this extra territorial immunity.    The facts are so imperfectly stated in the report of the case, that no principle can be deduced from the decision, except we may presume that without the assent of the creditor to the proceedings, by coming in and accepting a dividend, the discharge would have been invalid.    The principle is not new, as it had been before repeatedly recognized in analagous cases, both in this country and in England.    3 *Caines* 154.    8 *Barn. & Cres.* 477.    2 *Kent's Comm.* 393, *n*. 3d ed. *Baldwin's C. C. R.* 296.    2 *Peters Dig.* 470.    In *Phillips* v. *Allan*, 8 *Barn. & Cres.* 477, a discharge under the law of Scotland was set up against a debt contracted in England, which was conceded to be no bar; but the plea averred that the plaintiff appeared in the court in Scotland and opposed the discharge of the defendant, which was relied on as evidence of his consenting to be bound by that law.    That conclusion from the premises, was de-

nied by the court; but it was conceded that if he had taken the benefit of the law by coming in and receiving a distributive share of the property, it would have been otherwise. That would have been such an assent as might have bound him. Our insolvent act recognizes the same principle by declaring that the dischàge shall exonerate the insolvent from all debts contracted within the state, &c., owing to persons not residing within it, who shall have united in the petition for the discharge, or shall have accepted a dividend from the estate. 1 *R. S.* 781, § 30. This ground, therefore, taken by the Chancellor in favor of the defendants, I think, affords a clear and decisive answer to the several demands of the complainants: upwhich, alone, I shall vote for an affirmance of his decree.

On the question being put, *Shall this decree be reversed ?* the members of the court present at the argnment *unanimously* answered in the negative. Whereupon the decree was AFFIRMED.