[Civ. No. 350.   Fourth Appellate District.—April 15, 1931.]

HELEN I. PONTIUS, Respondent, v. G. T. McLAIN et al.,
Appellants.

Patrick F. Kirby, J. F. Moroney and W. Joseph Ford for Appellants.

A. G. Ritter for Respondent.

BARNARD, P. J.—This is an action for damages for injuries received in a collision between two automobiles which occurred in the city of Los Angeles on April 5, 1927. The plaintiff herein was driving one of the machines and the other was driven by the defendant Meadows and owned by the defendant McLain. The defendant Meadows reached his fourteenth birthday on March 28, 1927, eight days prior to the accident. On his birthday he applied to the Motor Vehicle Department for an operator's license, in accordance with the provisions of the Motor Vehicle Act. At that time his father was absent from California, and for some four months he, with his mother, had been living at the home of defendant McLain, who is his maternal grandfather. On the day of the collision here in question he received from the Motor Vehicle Department a temporary permit to drive an automobile, and this accident occurred on the evening of that day, while he was driving his grandfather's car, accompanied by another boy who had no license. Defendant McLain testified that his grandson took his car without his consent and against his instructions. The grandfather was sued on the theory that the boy's negligence was imputed to him through the fact that he had signed the boy's application for a license. There was admitted in evidence a copy of this application, which is in the usual form. In concluding the application states: "I hereby make application for a license to operate motor vehicles in the state of California." It appears to have been signed by the defendant Meadows. Following that appears the following:

"Pursuant to Section 62, Chapter 239, Statutes of 1925, and in assumption of the liability contained therein, the undersigned hereby joins in the application for Operator's License, above made. Both parents must sign if living and

have custody of the applicant, otherwise by the parent having custody.

Parents ( (Address Unknown     Father
( 
(Esther M. Meadows     Mother

or

Guardian, Employer of other person having custody of minor G. T. McLain Address 1184 N. Berendo Street."

Attached thereto was the following:

"This is to certify that I will vouch for Alvin Rush Meadows whose age is 14. That I am Grandfather and will be responsible for him while driving an automobile on a Public Highway in California.

"Name G. T. McLAIN
"1184 N. Berendo St."

The action was tried before the court without a jury, and from a judgment in favor of the plaintiff the defendants have appealed.

As a general proposition the negligence of a minor in driving an automobile is imputed to the person signing the application for his license. (*Buelke* v. *Levenstadt,* 190 Cal. 684 [214 Pac. 42, 43]; *Idemoto* v. *Scheidecker,* 193 Cal. 653 [226 Pac. 922]; *Marple* v. *American Automobile Ins. Co.,* 82 Cal. App. 137 [255 Pac. 260]; *Rock* v. *Orlando,* 100 Cal. App. 498 [280 Pac. 377].)

The first and apparently the main contention of appellants is that the appellant McLain cannot be held liable, since the usual operator's license, as distinguished from a temporary permit, had not yet been issued to appellant Meadows at the time the collision occurred. Appellants rely upon the case of *Rocha* v. *Garcia,* 203 Cal. 167 [263 Pac. 238]. That was a case where a license for a minor had been applied for but none had yet been issued, and the court held that the minor in question was not "so licensed" at the time, within the meaning of section 62 of the Motor Vehicle Act. Appellants further argue that the case of *Bosse* v. *Marye,* 80 Cal. App. 109 [250 Pac. 693], has established that there is a difference between driving an automobile and operating the same; that the minor here in question had a temporary permit to drive but had no license to operate an automobile;

that under the provisions of section 59 of the Motor Vehicle Act, in order to obtain a temporary permit to drive, it is not necessary for a minor to furnish any signers to his application; and that, therefore, the signing of this application by the grandfather had no effect until such time as a permanent operator's license should have been issued. After the cases cited arose, section 59 of the Motor Vehicle Act was amended, in 1925, to include a provision for a temporary permit, which had not theretofore been provided for. While, as pointed out in *Bosse* v. *Marye, supra,* one may be an operator of an automobile within the meaning of the Motor Vehicle Act without actually driving the same, on the other hand, under the definition applying under the terms of the act, one who actually drives the machine is an operator. (Sec. 18 of Motor Vehicle Act; Stats. 1923, p. 519.)

Looking at certain other provisions of the act as it stood at the time of the accident here in question, we find: Section 58 provides that all operators must be licensed, and it is made unlawful for any person, except those expressly exempted under this act, to drive a motor vehicle upon a public highway in this state, unless such person has been licensed. It is also provided that every person, before driving a motor vehicle, shall apply to the division for a license, either as an operator or a chauffeur, as the case may be. Section 59, as amended in 1925, provides for a temporary permit. It first provides that any person of requisite age to obtain an operator's license, *may* apply for a driver's permit. It then goes on to provide that the division, upon good cause shown, may, in its discretion, issue to an applicant a driver's permit entitling him to drive an automobile for a period of thirty days, when accompanied by an operator or chauffeur. Section 60 of the act gives the persons exempted, as referred to in section 58. It is perfectly apparent therefrom that a minor living in this state who has not theretofore been licensed is not exempted. Section 61 provides the form for an application and what it shall contain. Section 62 provides as follows:

"(a) The application to the division of any minor for an operator's license shall not be granted unless such application is signed by both the father and mother of the applicant if both the father and mother are living and have

custody of the applicant, otherwise by the parent, guardian, employer or other person having the custody of such minor.

"(b) Any negligence of a minor so licensed in driving a motor vehicle upon a public highway shall be imputed to the person or persons who shall have signed the application of such minor for said license, which person or persons shall be jointly and severally liable with such minor for any damages caused by such negligence."

Section 64, as amended in 1925, provides that an operator's license shall not be issued to any person under the age of fourteen years.

Since under section 18 of the Motor Vehicle Act any person driving an automobile on the highways is an operator, and under section 58 thereof any operator must be licensed, the temporary driver's permit provided for in section 59 must be held to be a form of operator's license. While this portion of section 59 was added in 1925, it must be read in connection with the entire act, and where it is ambiguous, in determining its meaning we may consider the expressed purpose of the whole act. Though limited in form, the temporary permit referred to is a license to drive an automobile upon the public highways, which makes such driver an operator under the other provisions of the act. This driver's permit is both an intermediary step in securing a more permanent license for a minor, and it is a granting of the minor's application for a license to drive. Although limited in form, it is an operator's license, as an operator is defined in section 18. But section 62 of the act says that the application of any minor for an operator's license shall not be granted until signed by other parties for the purpose named. We think that, under the amendment of 1925, this must be taken as referring both to section 58 and to section 59. If sections 61 and 62 of the Motor Vehicle Act, which give the form and requisites for an application, do not relate to section 59 as amended, then no form or requisites for the application referred to in section 59 is provided anywhere in the act. The legislature could hardly have intended to provide that a minor might orally apply for a driver's permit without giving any information to the department or furnishing anything which could be used as a basis for issuing such a license, with its important

relations to the public. So far as the public is concerned, the danger from a youth learning to drive and using a temporary permit, is as great if not greater than from one to whom a regular permit has been issued. It seems to have been intended that the conditions applicable to the issuance of the more permanent license should also apply to the temporary one. Section 59 does not relate to something entirely foreign to an operator's license, but merely adds to the existing set-up, a provision enabling anyone, whether a minor or not, if he is old enough to obtain an operator's license, to apply for and obtain one in a special form. This was done to facilitate education in driving on the part of any beginner, and not to relieve a minor from the general requirements of the act. Section 59 is not limited to minors, but is general in application, like section 58. But section 62 relates exclusively to the application of minors, and provides in effect that no license, or permit to drive, shall be issued to a minor, without the signatures required by that section. If it could be held that section 59 permits a minor to file a different sort of application for a driver's permit, requiring no sponsors, the fact remains that no such application was filed in this case. This minor did not make any such limited application. The only application here filed, as shown by the record, was one applying for an operator's license, not a driver's permit, and it conformed in all respects to the requirements of sections 61 and 62 of the act. In accordance with the discretion vested in the department by section 59 of the act, they issued a temporary permit. This was not only a license, but it was a form of operator's license, and its issuance was based upon the filing of this application. Not only was this necessary under all the provisions of the act, but there were no other provisions thereof under which this minor could have been so licensed, except through an application conforming to sections 61 and 62. This minor secured a license to drive a car by furnishing an application conforming to those sections. Having been furnished for the purpose of securing such a license, and being as necessary thereto as to the more permanent license which might follow, we think the application actually used here related to the permit issued, and that it cannot be said that no license was issued which was based upon the application.

Appellants next contend that appellant McLain, under the circumstances here shown, was not the proper party to sign the application; and that, being a mere volunteer, he cannot be held liable thereon. The statute provides that the application be signed by the father and mother of the applicant if they are both living and have custody of the minor; otherwise, by a guardian, employer or any other person having such custody. Appellants argue that because in this case the grandfather did not have the full legal rights of a parent, he was therefore a mere volunteer. The act is not based upon parenthood, and the question of who may sign the application does not depend upon the technical rights of a parent. This act is for the protection of the public and seems to have been purposely drawn in a way to meet practical conditions. Even a father and mother are not authorized to sign unless they have actual custody of the minor. Many situations might and do arise where parents have not relinquished their technical rights as such, but where they temporarily or otherwise may not be said to have the actual custody of a minor, in the sense of being actually in charge of him at the time. The act is framed not with a view to the fine technical sense in which parents may have certain rights in connection with their children, but in a general practical sense, in order to enable anyone actually having charge of a minor, and willing to stand responsible for him, to make it possible for him to drive a car. Even an employer may, and presumably often does, have control over a minor only a portion of the time, yet he may sign and enable the license to be issued. In the instant case, it was represented in the application that the father's address was unknown, so in a practical sense he did not have custody of the minor at that time. The mother signed the application but nothing appears to show that she had any particular custody of him, other than the fact that they both were living in her father's home. But the grandfather himself signed the application as an "other person having custody of minor" and thus represented that he had such custody. The evidence shows that he had been for some months in the habit of taking the boy around with him on his business trips and had been letting him drive. It is apparent that he at least had custody of him during such times, which may have been equally as much custody as

could be said to be exercised by some employers. Enough appears to justify the trial court in holding that he was not a mere volunteer, and that he had at least a part of the custody of the boy. Even where a father and mother sign the application, it would seem that their custody is either joint or divided, and no reason appears why the same situation did not here exist. We think this is not a case for hair-splitting technicalities and that the grandfather may not be conclusively held to have been a mere volunteer. (*Buelke v. Levenstadt, supra.*)

In addition to the fact that the father of this minor was absent, his address being unknown; that the boy was living in his grandfather's home; that he had been in the habit of driving his grandfather's car; and that the general relationship and situation is sufficient to bring the grandfather within the terms of the statute, a further consideration is, that appellant McLain fully represented that he was a person having custody of the boy, and that he used such representation to procure a license for the boy to drive a motor vehicle. As the court said in *Buelke* v. *Levenstadt, supra:* "To sustain such contention would be to countenance a fraud upon the people of the state . . . It is quite apparent why he did so, and we are not constrained to assist him in evading the liability he assumed over his own signature by any nicety of construction or regard for technical use of words." Not only did the appellant McLain sign the general statement in the application to the effect that he was doing it in order to comply with section 62 of the act and in assumption of the liability imposed thereby, but he added the separate and distinct statement that he vouched for the minor and that he would be responsible for him while driving an automobile on a public highway in California. Having thus formally accepted liability upon the express representation that he was a person having custody of the minor, he is in no position to now claim that this representation was false. While the evidence here does not conclusively show that the license issued was the driver's permit referred to in section 59 of the act, even if it was, we are of the opinion that it was one form of operator's license provided for by the act, and it being issued on the representations of appellant McLain and upon his agreement to be held responsible, and his agreement being

in no manner limited to any particular form of a license, we think this minor was "so licensed" within the meaning of subdivision b of section 62 of the Motor Vehicle Act.

Appellants further contend that at the time this collision occurred, the minor here in question was not acting under any license, since at that time he had no licensed operator with him. As the court said in *Bosse* v. *Marye, supra,* the Motor Vehicle Act shows: "A clear intention to include within such liability any negligent act which is the direct result of the privilege extended by the statute to said minor under his or her operator's license to operate an automobile on a public highway."

This was apparently the first time this minor had taken his grandfather's machine alone. This occurred on the day he received his license, and presumably because of that fact. The accident may be said to have followed as a result of the privilege thus extended to him. Because he disobeyed the terms of the license itself, in addition to his other negligence, is not to be taken as freeing the signers of his application from liability, but rather makes the matter worse.

It is next contended that there is no evidence that appellant McLain signed the application of this minor for a license, and in this connection it is urged that the trial court was in error in admitting in evidence a copy of the written application. A witness for the motor vehicle department testified that she had charge of such papers, that she herself made this copy from the original on file in their office, and that this was an exact copy. She then testified that she had made an extensive search but had been unable to find the original, and was later told that the same had been destroyed. Appellant McLain himself testified that he went with the minor for the purpose of securing a license and that he had signed something, although he was not sure what it was. He further stated "the man asked me to sign the paper", and again, "he asked me if I would sign the paper and I did". Without reviewing the entire evidence, it abundantly appears that he did sign the application, and also that he not only knew what he was signing but went there for the particular purpose of getting a license for the minor. The copy of the application was properly admitted in evidence.

Appellants further contend that the court erred in finding that there was no contributory negligence on the part of the plaintiff. It will serve no useful purpose to review the evidence on this point. Even the evidence pointed out by the appellants shows that the question as· to contributory negligence was one of fact and not of law, and there being ample evidence to sustain the court's finding in that regard, that finding cannot be disturbed.

The judgment is affirmed.

Jennings, J., and Lamberson, J., *pro tem.*, concurred.