EDWARD K. BISPHAM, JR., Administrator of the estate of Harrison Augustus Bispham, 2nd, Deceased, *v.* LESLIE P. MAHONY.

*(November 13, 1934.)*

LAYTON, C. J., RICHARDS and RODNEY, J. J., sitting.

*John Biggs, Jr.,* (of Biggs, Biggs and Lynch) for plaintiff.

*James R. Morford* (of Marvel, Morford, Ward and Logan) for defendant.

Superior Court for New Castle County, No. 77, March Term, 1934;

LAYTON, C. J., delivering the opinion of the Court:

If the legislation attacked by the demurrer is a proper exercise of the police power of the State, the argument is at an end.

This power is incapable of that precise definition which may absolutely indicate its limits, but it may be said to be the power inherent in government to enact laws, within constitutional limits, to promote the order, safety, health, morals and general welfare of society. 12 *C. J.* 904. It is a plenary power in the State coextensive with self protection, and is as broad as the public welfare. As said by Chief Justice Pennewill, in *State v. Grier,* 4 *Boyce* (27 *Del.*) 322, 88 *A.* 579, 592,

"* * * the State has the right under its police powers to enact such legislation as is reasonably necessary to promote and protect the lives, morals and safety of its citizens. It is also admitted law that the State has the right to decide whether the evil exists and what legislation is necessary to suppress or cure it, that is, what the remedy shall be, and such decision will not be reversed or disturbed by the courts unless the legislation proposed is manifestly unreasonable and unwarranted, and a palpable invasion of the rights secured by the fundamental law."

The right to operate a motor vehicle upon the public highways is not an unrestricted right, but is a privilege exercisable within reasonable legislative limitations, and, subject to the Federal and State Constitutions, the Legislature, under the police power, may regulate and control by reasonable rules and regulations the use of motor vehicles upon its highways, *Michigan Public Utilities Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105,* and as the operation of a motor vehicle on congested highways requires both physical and mental discretion, especially in cases of emergency, experience teaches that children, generally speaking, do not possess these qualifications. *Collins v. Liddle, 67 Utah 242, 247 P. 476.* It is within the power of the State to require that an applicant for an operator's license shall not be younger than a prescribed age. 42 *C. J.* 740, 745. Generally, the prescription of the age of eighteen years before which a license to operate a motor vehicle may not be granted is not an arbitrary and unreasonable exercise of the police power as violative of the State or Federal Constitutions which forbid the taking of private property without due process of law. *State ex rel. Oleson v. Graunke, 119 Neb. 440, 229 N. W. 329.*

Granting, therefore, the right of the State to restrict the issuance of licenses to operate a motor vehicle to those who have reached a prescribed age, it follows that the State has the power to license those under that age, upon meeting required tests as to ability, and to require the consent of parent, guardian or employer thereto.

██ ██ It is not understood that the defendant denies the soundness of these preliminary observations. His contention is that the statute seeks to impose a liability upon the defendant without regard either to his own negligence or to the doctrine of respondeat superior, and, therefore, it violates the due process and equal protection clauses of the State and Federal Constitutions, founding his argument upon the general proposition that liability without fault cannot ordinarily be imposed upon a citizen.

The truth of the proposition, generally speaking, is not denied but it is not without exception. As said by Mr. Justice Holmes, in *Noble State Bank v. Haskell*, 219 *U. S.* 104, 31 *S. Ct.* 186, 187, 55 *L. Ed.* 112, 32 *L. R. A.* (*N. S.*) 1062, *Ann. Cas.* 1912A, 487,

> "We must be cautious about pressing the broad words of the 14th Amendment to a drily logical extreme. Many laws which it would be vain to ask the court to overthrow could be shown, easily enough, to transgress a scholastic interpretation of one or another of the great guaranties in the Bill of Rights."

There are instances at common law where one, by connecting himself voluntarily with an agency, may render himself liable for an injury even in the absence of actual negligence on his part; and there is a class of torts for which a defendant may be held liable, where the act was not intended by him, and where he was not negligent but which was due to an instrumentality which he employed. Examples are, liability for damage done by blasting, *Sullivan v. Dunham*, 161 *N. Y.* 290, 55 *N. E.* 923, 47 *L. R. A.* 715, 76 *Am. St. Rep.* 274; of the keeper of dangerous animals, *Muller v. McKesson*, 73 *N. Y.* 195, 29 *Am. Rep.* 123; of a master for a servant, and of a ship for the care of disabled seamen, see *Scarff v. Metcalf*, 107 *N. Y.* 216, 13 *N. E.* 796, 1 *Am. St. Rep.* 807. See note in 34 *L. R. A.* (*N. S.*) 162, quoting 24 *Harvard Law Review*, 649. It is conceded that these cases depend upon such considerations as the employment or keeping of a dangerous instrumentality, or

upon some relation of agency; and the same may be said of statutes making railroads liable for all fires communicated from their engines, regardless of the question of negligence, *St. Louis & S. F. R. Co. v. Mathews,* 165 *U. S.* 1, 17 *S. Ct.* 243, 41 *L. Ed.* 611.

But instances may be cited where statutes directed to circumstances and conditions more akin to those under consideration here have been upheld as not contravening the equal protection and due process clauses. In *Jones v. Brim,* 165 *U. S.* 180, 17 *S. Ct.* 282, 283, 41 *L. Ed.* 677, the Court considered a statute of Utah which imposed liability upon every person driving a herd of animals over a hillside public highway for all damage done by such animals in destroying the banks or rolling rocks upon the highway. The Court held that the effect of the statute was a legislative declaration that the passage of herds of animals over a hillside highway was so likely, in the absence of great precautions, to result in damage to the road, that there ought to be no controversy over the question of the existence, or non-existence of negligence, but that negligence should be conclusively presumed; and that province of the legislature to "provide the nature and extent of the legal presumption to be deduced from a given state of facts, and the creation by law of such presumption is, after all, but an illustration of the power to classify"; and that if the statute applied generally to all persons in circumstances substantially similar, and if provision was made for the ascertainment of liability by judicial proceedings, neither the equal protection nor the due process clauses of the Constitution was contravened. In *City of Chicago v. Sturges,* 222 *U. S.* 313, 32 *S. Ct.* 92, 56 *L. Ed.* 215, *Ann. Cas.* 1913B, 1349, the constitutionality of a statute of Illinois making a city liable for three-fourths of the damage resulting to property therein caused by mob violence, not abetted or permitted by the negligent or wrongful act of the owner, and saying to the owner his action against the rioters and giving the city a

lien upon any judgment against participants in the riot for reimbursement, or a remedy against the individuals causing the damage to the amount of any judgment it may have paid, was before the Court. There, the argument was that due process was denied since liability was imposed regardless of the power of the city to have prevented the violence, or regardless of negligence in the use of its power. The Court sustained the statute, and in the course of its opinion said, "It is a general principle of our law that there is no individual liability for an act which ordinary human care and foresight could not guard against. It is also a general principle of the same law that a loss from any cause purely accidental must rest where it chances to fall. But behind and above these general principles which the law recognizes as ordinarily prevailing, there lies the legislative power, which, in the absence of organic restraint, may, for the general welfare of society, impose obligations and responsibilities otherwise non-existent"; and observing that the imposition of liability upon a civil subdivision of government exercising delegated police power is familiar to every student of the common law, the opinion proceeds,

"The imposition of absolute liability upon the community when property is destroyed through the violence of a mob is not, therefore, an unusual police regulation. Neither is it arbitrary, as not resting upon reasonable grounds of policy. Such a regulation has a tendency to deter the lawless, since the sufferer must be compensated by a tax burden which will fall upon all property, including that of the evil doers as members of the community. It is likewise calculated to stimulate the exertions of the indifferent and the law-abiding to avoid the falling of a burden which they must share with the lawless."

In *Palmer v. City of Concord,* 48 *N. H.* 211, 97 *Am. Dec.* 605, with respect to a similar statute, it was said,

"The liability imposed by the statute is irrespective of any inability or neglect on the part of the city."

In *County of Allegheny v. Gibson,* 90 *Pa.* 397, 35 *Am. Rep.* 670, the Court reviewing a similar statute, in speaking of the course of the ancient English law said,

"The principle upon which this legislation rested was that every political subdivision of the state should be responsible for the public peace and the preservation of private property; and that this end could be best subserved by making each individual member of the community surety for the good behavior of his neighbor. * * *"

See, also, *City of Chicago v. Manhattan Cement Co.*, 178 *Ill.* 372, 53 *N. E.* 68, 45 *L. R. A.* 848, 69 *Am. St. Rep.* 321; *Darlington v. Mayor, etc., of N. Y.*, 31 *N. Y.* 164, 88 *Am. Dec.* 248; *Board of Com'rs v. Church*, 62 *Ohio St.* 318, 57 *N. E.* 50, 48 *L. R. A.* 738, 78 *Am. St. Rep.* 718.

In *Wall v. Allen*, 244 *Ill.* 456, 91 *N. E.* 678, 680, 18 *Ann. Cas.* 175, the Court upheld the constitutionality of a statute subjecting premises, leased for the sale of intoxicating liquor, or which the owner knowingly permitted to be used for that purpose, to the lien of a judgment recovered for an injury sustained in consequence of the occupant selling or giving away intoxicating liquor. It was held that the act was not unconstitutional as depriving the owner of his property without due process of law since he was permitted to controvert the fact on which the lien rested. After adverting to the police power and the right of the legislature to protect the health, morals and safety of the people by prohibiting the traffic in intoxicating liquors, or subjecting that traffic to conditions, the Court said,

"This was the law when the defendant leased his premises, and he must be held to have consented that the premises should be surety for any such judgment. He had his election to lease his premises for the sale of intoxicating liquors or to devote them to some other use, and to either permit them to be used for that purpose or to prevent such use, and we do not see how it can be said that he is deprived of his property without due process of law when he is permitted to controvert the facts upon which the lien rests. * * * He is primarily liable to any party injured, if such party chooses to avail himself of that remedy; but he must be held to have known that the law would also subject his premises to a lien for any judgment against the dramshop keeper, and he may properly be held to have voluntarily subjected them to the liability."

In *Bertholf v. O'Reilly*, 74 *N. Y.* 509, 30 *Am. Rep.* 323, where a similar statute was before the Court, it was said

that the liability did not depend upon negligence of the landlord in the selection of the tenant or of the tenant in selling the liquor. And the Court proceeded to say,

> "We do not mean that the Legislature may impose upon one man liability for an injury suffered by another, with which he had no connection. But it may change the rule of the common law, which looks only to the proximate cause of the mischief, in attaching legal responsibility, and allow a recovery to be had against those whose acts contributed, although remotely, to produce it."

*Buelke v. Levenstadt,* 190 *Cal.* 684, 214 *P.* 42, 44, is exactly in point. There the Court had before it a statute substantially similar to our own, except that it applied to all minors. The Court sustained the statute in all respects. In answer to the contention that the application of the law to all minors, as a class, irrespective of age, experience, ability to drive or financial responsibility, was unreasonable and discriminatory, and, therefore, unconstitutional, it said that this argument was one properly to be addressed to the legislature and not to the Court. And the Court proceeded to hold that the legislature had in mind that, as a general rule, the owner of an automobile who was not present at the infliction of the injury cannot be held liable except upon proof that its operator was his agent or servant and at the time engaged in the owner's business, and also the general rule that a parent is not liable for the torts of his child; that, while an automobile is not, in and of itself, a dangerous machine, it may become such in the hands of an indiscreet person; and that the statute was a legislative determination "that minors have not that discretion and judgment which entitles them to unrestrained permission to operate such vehicles upon the public thoroughfares, freed from all parental liability for their negligence except in those cases where it can be established that they are acting as the agent or servant of the owner of the car causing an injury"; and, continuing, said, "The Legislature has now declared that under a given state of

facts a liability exists where none existed before." See, also, 1 *Blashfield, Automobile Law,* 1002; *Ponitus v. McLain,* 113 *Cal. App.* 452, 298 *P.* 541; *Almstead v. Tanger,* 115 *Cal. App.* 267, 1 *P.* (2*d*) 521; *Sgheiza v. Jakober,* 132 *Cal. App.* 57, 22 *P.* (2*d*) 19.

The defendant relies strongly upon *Daugherty v. Thomas,* 174 *Mich.* 371, 140 *N. W.* 615, 45 *L. R. A.* (*N. S.*) 699, *Ann. Cas.* 1915*A,* 1163. That case has no application here. There the statute under review made the owner of an automobile liable for any injury caused by its negligent operation by any person who might obtain possession of it, even without his consent or knowledge, except in the one case where the vehicle had been stolen, and it is not difficult to agree with the conclusion of the Court that the statute was arbitrary and oppressive, and that the effect of it would be to hold a defendant absolutely liable for the negligent conduct of another in the absence of actual negligence on his part, and with respect to whom he had no responsible connection.

The defendant lays stress upon the feature of consent by the owner to the operation of a motor vehicle as a predicate of liability in a statute of Iowa. *Seleine v. Wisner,* 200 *Iowa* 1389, 206 *N. W.* 130, and in the Michigan statute of 1915, *Stapleton v. Independent Brewing Co.,* 198 *Mich.* 170, 164 *N. W.* 520, 521, *L. R. A.* 1918*A,* 916. The latter case arose under a statute designed to cure the defect in the statute before the Court in the *Daugherty Case* by making the owner of a motor vehicle liable for injury when driven with his express or implied consent. This statute was sustained as being within the police power, the Court concluding its opinion by saying,

"The owner of an automobile is supposed to know, and should know, about the qualifications of the persons he allows to use his car, to drive his automobile, and if he has doubts of the competency or carefulness of the driver he should refuse to give his consent to the use by him of the machine."

From these cases the defendant deduces the conclusion that a statute of a nature similar to that under consideration is not a valid enactment unless it is based upon the conception of consent to liability on the part of the one upon whom liability is sought to be imposed, and he contends that the Delaware statute is not predicated upon "consent." Whether this is a sound deduction we need not pause to inquire, for the reason that the difference between the Iowa and Michigan statutes and our own is not in principle, but in degree, that is, the nearness or remoteness of responsible connection. By those statutes the parent is tied to the injury by his consent to the use by the minor of a particular car, his own. By our statute, the parent, guardian or employer is tied by his consent to the use of any car by a minor under eighteen years. The connective responsibility, although, in a sense, more remote, is in view. *Bertholf v. O'Reilly, supra;* and the use of any motor vehicle by a minor under eighteen years is considered a potential danger and is precisely the evil against which the statute was designed to guard by refusing the license unless consented to by the parent, guardian or employer, and upon his suretyship.

Again, it is contended by the defendant that this jurisdiction has aligned itself definitely with *Daugherty v. Thomas, supra,* by *Smith v. Callahan,* 4 *W. W. Harr.* (34 *Del.*) 129, 144 *A.* 46, 64 *A. L. R.* 830. There the right of action was based upon the common law. No statute was involved. Following the principle indicated in *Cannon v. Bastian,* 1 *W. W. Harr.* (31 *Del.*) 533, 116 *A.* 209; and pronounced in *Cerchio v. Mullins,* 3 *W. W. Harr.* (33 *Del.*) 245, 138 *A.* 277, the Supreme Court definitely decided that a father is not liable for injury caused by his minor son's negligent operation of the father's automobile under general permission to use it, where at the time of the injury the son was alone and in pursuit of his own pleasure. While the Court, speaking through the Chancellor, repudiated the

theory of public policy as a basis of liability in such case, there is nothing in the opinion to suggest that the Chancellor had in mind the thought that the Legislature, within reasonable limits, is powerless to declare a public policy and to create a liability where none existed at common law. There is no activity in which caution, discretion and judgment are more necessary than in the operation of motor vehicles, and these characteristics are not those of extreme youth. Upon these considerations, the Legislature has acted for the protection of the public. A minor's physical ability and mechanical skill having been established, the Legislature has presumed that one of the age of eighteen years has the judgment and discretion to operate a motor vehicle. With respect to one under that age, the license to operate is withheld unless that person who is supposed to have an intimate knowledge of the minor and his characteristics, the parent, guardian or employer, consents to the issuance of the license by signing the application; and to insure that this consent shall not be a mere formality, lightly given, a burden of responsibility is imposed. The parent, or other person, is free to give or withhold his consent. He is not compelled to do anything. If he consents and the license is issued, he serves his own purpose whether that is the accrual to him of some material benefit or merely the natural pleasure resulting from the gratification of the child's desire. He has assumed a responsible connection and there is no apparent reason why the benefit, substantial or sentimental, should not carry with it a possible disadvantage.

The statute is general in its application. It embraces all persons under substantially like circumstances. It is a reasonable exercise of the police power for the advancement of the public welfare and, therefore, does not deny to the defendant the equal protection of the law. So also, provision is made for the ascertainment of liability by judicial proceedings, and it may not be said that the enforcement

of the statutory liability constitutes a taking of property without due process of law.

The demurrer is overruled.