ANTHONY SHUBA, Appellant, *v.* GEORGE J. GREENDONNER. Respondent.

DONALD BUCHER, Appellant, *v.* GEORGE J. GREENDONNER, Respondent.

LEONARD ZIMMERMAN. Appellant, *v.* GEORGE J. GREENDONNER, Respondent.

ANGUS LA LONDE. Appellant, *v.* GEORGE J. GREENDONNER, Respondent.

CARSON BAKER, Appellant, *v.* GEORGE J. GREENDONNER, Respondent.

Fourth Department, November 7, 1935.

*Daniel Scanlon*, for the appellants.

*Jesse E. Kingsley*, for the respondent in each appeal.

TAYLOR, J. Defendant and his son, Carl, a minor over sixteen years of age, resided in the State of Connecticut. A Ford car, driven by the son, collided with a bus driven by plaintiff Carson Baker on a New York State highway whereby Carl Greendonner and one of the bus passengers were killed and the plaintiffs in the several actions on appeal were injured. The actions were tried together and the jury found for defendant. Appellants are here on a short record to raise the sole question whether the defendant was erroneously allowed to introduce testimony to the effect that he was not the owner of the Ford car at the time of the collision. For the purposes of this appeal counsel have stipulated that there was sufficient evidence to justify a jury finding that the driver, Carson Baker, was guilty of contributory negligence in the operation of the bus; that the other plaintiffs, appellants, were also guilty of contributory negligence, and that Carl Greendonner was free from negligence.

Section 1561 of the Connecticut General Statutes, which is in evidence, reads as follows:

" Motor vehicles owned by minors. The commissioner shall not register any motor vehicle owned by any person under sixteen years of age and shall not register any motor vehicle owned by any person between sixteen and twenty-one years of age unless such person shall file proof of financial responsibility in accordance with the provisions of section 1609, together with a certificate signed by either or both of the parents, as the commissioner may require, or the legal guardian of such person, approving or requesting the registration of such vehicle."

The record shows that Carl Greendonner never complied with this statute. Defendant testified that he registered the Ford car and took the license plates in his own name, insured the car in his own name and sold it the day after the mishap, but that he never drove the car nor paid toward its upkeep. He also testified that he was familiar with the Connecticut statute above quoted. He was permitted to present testimony indicating that his son, Carl, bought and paid for the car, in an effort to rebut the presumption of his own ownership resulting from the registering of the car in his own

name. This testimony, if believed, was sufficient to establish as a fact that the son, not the father, was the owner of the car.

I heartily concur in the statement that a person should not be allowed to profit from his own wrong. But that maxim is not of controlling importance in determining the exact question of procedure before us here, as I shall endeavor to show.

. The transaction carried out by the father and son in Connecticut with reference to the car is not primarily attractive, but we conclude that it does not prevent defendant in the instant case from making the proof specified. The father's fraudulent acts — characterizing them thus for the purposes of this opinion — may have been intended to furnish the basis of a claim of ownership in the father in case the Connecticut authorities should proceed against the son for driving the car without registering it. This course of conduct might sometime have been a matter of interest to the State of Connecticut and its citizens as a subject calling for law enforcement against Carl Greendonner had he lived, possibly against defendant. But the father's conduct, even if it were accompanied by the plan and purpose just stated, should not prevent him from proving the truth as to the ownership of the car in the present action, for the reason that neither these plaintiffs nor Carl Greendonner nor the driver of the bus either did anything or omitted to do anything involved in the collision in reliance upon or affected by defendant's conduct in registering the car. None of the facts and transactions involved in the car registration had anything to do with the happening of the accident. (*Messersmith* v. *American Fidelity Co.*, 187 App. Div. 35, 40; affd., 232 N. Y. 161; *Worsham Buick Co.* v. *Isaacs*, [Texas Commission of Appeals] 51 S. W. [2d] 277.)

The reasoning of Judge CARDOZO in the *Messersmith* case applies here. There it was urged by the defendant insurer that a father should not recover liability insurance for the reason that his infant son who injured a third person while driving the father's car had been willfully directed by his father to drive the car in violation of law; that this willful and active participation in an act interdicted by law should estop the father; that he should not profit from his insurance contract because of his own wrong. But even though the statute forbidding the infant to drive a car was enacted to protect users of the highways in general from the careless acts of immature drivers, still the court said that careless driving by the son and injury resulting therefrom had not been in the father's contemplation when he gave the car into the son's use; that the father " did not desire or intend that there should be an injury to travelers;" that — wantonness not being claimed — negligence

was the thing insured against whether that of the owner or of his appointee. So here. Escape from liability on account of negligent driving of the Ford car was not contemplated by this defendant father when he participated in the purchase and registration of the car. It could not have been. If the son had caused injury to a third person the son could have been held as the immediate actor and the father's chances of escape from liability — had he been sued — would hardly have been improved by the registration of the car in the father's name. Furthermore, if the father had caused injury while driving the car himself, he could have been held liable as the direct perpetrator of the wrong and the registration in his own name would, of course, not have been advantageous to him. The opinions in *Brown* v. *Shyne* (242 N. Y. 176); *Corbett* v. *Scott* (243 id. 66), and *Klinkenstein* v. *Third Ave. R. Co.* (246 id. 327, 332, 333) are also helpful by analogy in arriving at the correct implications from the set of facts we have under consideration.

Estoppel is never employed as a means of inflicting punishment for an unlawful or wrongful act. (*Worsham Buick Co.* v. *Isaacs,* *supra.*) In the present circumstances there is no ground of estoppel as a matter of law.

The truth as to the ownership of the car was the object of the jury's quest, the artifices, methods and motives of this defendant being of collateral importance only. It must be remembered, too, that we are passing upon the competency of testimony and not upon the merits of jury findings. The trial court correctly received the evidence proffered by defendant for the purpose mentioned and the judgment appealed from should be affirmed, with costs.

On each appeal: All concur, except EDGCOMB and CROSBY, JJ., who dissent and vote for reversal on the law in separate opinions. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

EDGCOMB, J. (dissenting). Although the car involved in the accident which forms the basis of this action was registered in the name of the defendant, he now seeks to avoid the presumption of ownership which arises from that fact (*Ferris* v. *Sterling*, 214 N. Y. 249), and to escape liability for the damages sustained by the injured plaintiffs upon the theory that the automobile did not belong to him, but to his son, Carl Greendonner.

Carl was a minor, and under the Connecticut statute the car could not be registered in his name unless he first filed proof of his financial responsibility, in the shape of an insurance policy of $10,000, or its equivalent, together with a certificate signed by one

or both of his parents, approving or requesting the registration of such vehicle. (General Statutes of Connecticut, Revision of 1930, §§ 1561 and 1609.)

Motor vehicles in the hands of immature or incompetent drivers are a menace on the highway. The above statute was adopted in the interest of public safety, and to give assurance that any minor, who was operating a car, not only had the backing of his parents, but was financially responsible to answer in damages for any injury which might be occasioned by his negligent driving.

Although he now claims, and seeks to show, that the car in question belongs to his son, defendant deliberately registered it in his own name, and affixed his own plates to the machine. He took out a policy on the car in his own name as owner; the son carried no insurance. Defendant did all this in defiance of the statute, and for the purpose of enabling his son to avoid the requirements of the act and the precautionary measures therein provided. Defendant's intent was to mislead and deceive not only the official charged with the duty of issuing a license, without which the car could never have been operated in or out of Connecticut, but also the public, who were interested in having this law obeyed. Defendant has achieved his purpose. The result has brought about a situation where the intent of the Legislature of Connecticut to avoid putting a motor vehicle in the hands of an immature driver who is financially unable to answer in damages for an injury occasioned by his negligent operation of his machine has been frustrated. But for defendant's deliberate deception, this situation would never have arisen. In all fairness, it would seem as if his own deceitful and fraudulent act should close his mouth, and stop him from denying that he is other than what he represented himself to be.

"It is a cardinal maxim that no one shall be allowed in a court of justice to take advantage of his own wrong." (*Gumbel* v. *Pitkin*, 124 U. S. 131, 147.)

This is no high-sounding slogan or emotional expression of some high objective. It is a principle which has become firmly imbedded in our jurisprudence. Back in 1795 the Supreme Court of the United States laid down the rule that all cases should be so conducted that a person guilty of fraud should not be allowed to gain by his deception. (*Talbot* v. *Janson*, 3 Dall. 133, 158.)

It is said by Mr. Justice HONYMAN in *Smith* v. *Baker* ([1873] L. R. 8 C. P. 350, at p. 357): "A man cannot at the same time blow hot and cold. He cannot say at one time that the transaction is valid, and thereby obtain some advantage, to which he could only be entitled on the footing that it is valid, and at another time say it is void for the purpose of securing some further advantage."

Fair play and common honesty demand that where inconsistency and deceit result in an injustice, as it does here, the guilty party shall lose his right to deny the truth of his statement. That is a salutary rule, and should be enforced.

The court has repeatedly refused its aid and closed its door to one who attempts to enforce a contract which is against public policy, or which is made in spite of some prohibitory statute. The object of such rule is not based upon any desire to relieve a party from an obligation which he has assumed, but rather to put a stop to the making of such contracts. (*Coverly* v. *Terminal Warehouse Co.,* 85 App. Div. 488; affd., 178 N. Y. 602; *Attridge* v. *Pembroke,* 235 App. Div. 101, 102; *Sturm* v. *Truby,* 245 id. 357.)

So here the court should decline to permit the defendant to deny or take advantage of his own deliberate, deceitful act as a defense to an action brought against him. When a person accepts the benefits flowing from his own act, he is required to bear the burdens incident thereto. I know of no better way to encourage deceit, fraud or the evasion of reasonable and beneficent statutes than to put a premium on such illegal acts. I can conceive of no quicker way to stop such conduct than to refuse to permit a party to disentangle himself from a web of his own weaving.

*Ferris* v. *Sterling* (214 N. Y. 249) is not controlling here. In that case the father's ownership of an automobile was disputed by him, and he offered to prove that the registration in his name was a mistake. He was permitted to show that fact. The proof, however, was intended to rectify an honest mistake. There was no honest mistake here. It was a premeditated and deliberate scheme to violate a statute. Under these circumstances to permit the defendant to escape the presumption of ownership which arises from his act would be to put a premium upon a subterfuge, and to reward the defendant for aiding a law-breaker.

We have been referred to no case directly in point, and research on my part has failed to disclose any. *Pontius* v. *McLain* (113 Cal. App. 452; 298 Pac. 541) has some analogy to the facts in the case before us. In that case the plaintiff was injured in a collision between his own automobile and one driven by the defendant Meadows, an infant, who at the time had a temporary permit to operate a car. On the lad's fourteenth birthday, eight days prior to the accident, he applied for an operator's license in accordance with the California statute, which required an application for a minor's license to be signed by the father and mother of the applicant, if both were then alive, and if they had custody of the applicant, otherwise by the parent, guardian, employer or other person having charge of the child. Meadows' father

and mother were both alive at the time, but the father was absent from the State, and the boy was temporarily residing with his mother at the home of the defendant McLain, the lad's maternal grandfather. The applicant's application was signed by his mother and his grandfather. Under the laws of California the negligence of a minor in driving an automobile is imputable to the person signing the application for his license. The grandfather sought to escape liability upon the ground, among other reasons, that he was not the proper party to sign the application, and that in so doing he was a mere volunteer. The court rejected this plea, and held that the grandfather had represented himself to be a person having custody of the lad, and that he had used such representation to procure a license for his grandson to drive the car, and that to sustain his plea would be to countenance a fraud upon the people of the State. The court said that it was " not constrained to assist him in evading the liability he assumed over his own signature by any nicety of construction or regard for technical use of words."

There is also some analogy to be found in cases where a party has availed himself for his own benefit of a statute and where he attempts in subsequent litigation with others, if the act works out to his disadvantage, to set up its unconstitutionality as a defense. It has repeatedly been held that this could not be done; that in such a case the principle of estoppel applied with full force and conclusive effect. (*People* v. *Murray*, 5 Hill, 468; *Van Hook* v. *Whitlock*, 26 Wend. 43, 54, 55; *Daniels* v. *Tearney*, 102 U. S. 415, 421; *Ferguson* v. *Landram*, 5 Bush [Ky.], 230; *City of Burlington* v. *Gilbert*, 31 Iowa, 356.) In those cases there was no fraud, deceit or violation of any statutory or moral law. When that is present, how much more reason is there for enforcing the rule which precludes a party from denying the truth of a position which he has taken for his own advantage, or to help out a member of his own family?

As the verdict was a general one, it cannot be determined whether it was predicated upon a finding that the defendant was not negligent, or that the plaintiffs were guilty of contributory negligence, or whether it was based upon the erroneous finding that the father did not own the car. The verdict, therefore, must fall. (*Tryon* v. *Willbank*, 234 App. Div. 335; *Hawn* v. *Malcolm*, 171 id. 120, 122; *Jennings* v. *Degnon Contracting Co.*, 165 id. 248, 251.)

I think that the judgment should be reversed and a new trial should be granted.

CROSBY, J. (dissenting). I concur in the view expressed in the dissenting opinion of Mr. Justice EDGCOMB. The doctrine of estoppel is invoked to prevent a person from reaping an unfair

advantage gained by another person's reliance upon what he has said or done. The unfair advantage, to prevent which estoppel should be here invoked, is a defensive advantage, which is as real and substantial as any. Plaintiff's reliance upon defendant's false statement, made in applying for a license, is also entirely obvious. In issuing a license the licensing authority is not acting for itself alone, but in behalf of the general public, by which is meant all those who may come into contact with the licensed car. This public includes people of New York as well as residents of Connecticut. It is too narrow a view to say that defendant's fraud is a matter of concern only to the State of Connecticut. Defendant, by his false statement, induced the public, represented by the licensing agency of the State of Connecticut, to issue a license which, through defendant's fraud, had the effect of placing into the hands of a minor son an instrument inherently dangerous in its character, to be driven not only in the State of Connecticut, but in every State. It is easily conceivable that the authorities might not have been induced to issue a license to defendant's minor son — he may very well have been found an unfit person to drive a car. Defendant, by his fraud, induced the public, represented by its agents and officers, to issue a license to defendant in reliance on the belief that the son would not drive it. Defendant by his fraud has caused the public to accept a risk it never intended to accept, the risk involved in the son's driving a car. It seems to me a case could scarcely be imagined where the doctrine of estoppel could be invoked with greater justice or better results than here.

On each appeal: Judgment affirmed, with costs.